[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15548

_____

D.C. Docket No. 2:09-cv-01732-KOB


SANDRA SLATER,

Plaintiff - Appellant,

versus

UNITED STATES STEEL CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

ON PETITION FOR REHEARING


(September 18, 2017)

Before ED CARNES, Chief Judge, TJOFLAT, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.[*]

JILL PRYOR, Circuit Judge:

When an individual files for bankruptcy, he must file sworn disclosures listing his debts and his assets, including any pending civil claims, and identifying any lawsuits he has filed against others. Occasionally, a plaintiff who has a pending civil lawsuit fails to list the claims or lawsuit in these disclosures. In omitting this information, the plaintiff effectively takes inconsistent positions in the two judicial proceedings by asserting in the civil lawsuit that he has a claim against the defendant while denying under oath in the bankruptcy proceeding that the claim exists.

The equitable doctrine of judicial estoppel is intended to protect courts against parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment. Today, we address how this doctrine should be applied when a plaintiff takes inconsistent positions by pursuing in district court a civil claim that he failed to disclose as an asset in his bankruptcy proceedings. We reaffirm our precedent that when presented with this scenario, a

---

[*] Judge Hull recused herself and did not participate in these en banc proceedings. Judge Newsom joined the Court on August 4, 2017, and did not participate in these en banc proceedings.

2

district court may apply judicial estoppel to bar the plaintiff's civil claim if it finds that the plaintiff intended to make a mockery of the judicial system.

But what suffices for a district court to find that a plaintiff who did not disclose a civil lawsuit in bankruptcy filings intended to make a mockery of the judicial system? Our Court has endorsed a rule that the mere fact of the plaintiff's nondisclosure is sufficient, even if the plaintiff corrected his bankruptcy disclosures after the omission was called to his attention and the bankruptcy court allowed the correction without penalty. *See Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). We granted en banc review to reconsider this precedent.

We hold today that when determining whether a plaintiff who failed to disclose a civil lawsuit in bankruptcy filings intended to make a mockery of the judicial system, a district court should consider all the facts and circumstances of the case. The court should look to factors such as the plaintiff's level of sophistication, his explanation for the omission, whether he subsequently corrected the disclosures, and any action taken by the bankruptcy court concerning the nondisclosure. We acknowledge that in this scenario the plaintiff acted voluntarily, in the sense that he knew of his civil claim when completing the disclosure forms. But voluntariness alone does not necessarily establish a calculated attempt to undermine the judicial process. We therefore overrule the

3

portions of *Burnes* and *Barger* that permit a district court to infer intent to misuse the courts without considering the individual plaintiff and the circumstances surrounding the nondisclosure.

Here, the district court applied judicial estoppel to bar plaintiff Sandra Slater's discrimination and retaliation claims in a lawsuit against her employer, U.S. Steel Corporation, because Slater failed to disclose these civil claims as assets in her bankruptcy. Relying on our precedent in *Burnes* and *Barger*, the district court inferred from Slater's nondisclosure alone that she intended to manipulate the judicial process. A panel of our Court affirmed, concluding that the district court did not abuse its discretion in applying judicial estoppel. Because we announce a new inquiry for evaluating intent to make a mockery of the judicial system, we remand to the panel so that it may decide whether the district court abused its discretion in light of this new standard.

## I.    Factual Background and Proceedings Below

Slater, a high school graduate, worked for U.S. Steel for more than 10 years performing general manual labor. Slater sued U.S. Steel for discrimination based on race and sex in violation of Title VII, 42 U.S.C. § 2000e *et seq*, and 42 U.S.C. § 1981, and for retaliating against her after she complained of race and sex discrimination, in violation of Title VII and § 1981. U.S. Steel moved for summary judgment on all of Slater's claims. The district court granted the motion

4

in part and denied it in part.  The court denied summary judgment on Slater's claims that she suffered discrimination in job assignments based on her sex and was fired in retaliation for complaining about racial discrimination.  Despite withstanding summary judgment, Slater never had an opportunity to present these claims to a jury.

About a month after the district court's summary judgment ruling, Slater—represented by different counsel than in her discrimination case—filed a petition for Chapter 7 bankruptcy.  She did not disclose her lawsuit against U.S. Steel in her bankruptcy petition or the schedules filed with her petition.  When asked under penalty of perjury in Schedule B-Personal Property to identify any "contingent and unliquidated claims," she answered "none."  Voluntary Pet. at 10, *In re Slater*, No. 11-02865 (Bankr. N.D. Ala. June 2, 2011), ECF No. 1.  And when asked under penalty of perjury in her Statement of Financial Affairs to identify any "suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case," she again answered "none."  *Id.* at 29 (emphasis omitted).

After Slater filed her disclosures, the bankruptcy trustee issued a Report of No Distribution, finding there was no property available for distribution from the estate over and above that exempted by law.  In the absence of any objections to

the report, 30 days later the estate became presumptively fully administered. *See* Fed. R. Bankr. P. 5009(a).

The next day, U.S. Steel again moved for summary judgment in the employment discrimination case, this time on the ground that because Slater failed to disclose her civil claims in the bankruptcy proceeding, the doctrine of judicial estoppel should bar her from pursuing those claims. In response, Slater testified by declaration that she did not intentionally misrepresent facts to the bankruptcy court. She further explained that she misunderstood the question in the Statement of Financial Affairs regarding "suits and administrative proceedings to which the debtor is or was a party" as asking only about suits filed against her.

The next business day after U.S. Steel filed the motion, Slater amended her Statement of Financial Affairs and Schedule B to her bankruptcy petition to disclose her claims against U.S. Steel. The bankruptcy trustee then filed with the bankruptcy court a request to employ the lawyers who were representing Slater in her employment action to continue to pursue the claims against U.S. Steel on behalf of the estate. The bankruptcy court granted the motion.

The bankruptcy case proceeded: upon Slater's petition, the court converted the case from a Chapter 7 to a Chapter 13 proceeding, and Slater filed a proposed Chapter 13 plan, which the bankruptcy court confirmed. Later, though, when Slater failed to pay the trustee under the terms of the confirmed plan, the

6

bankruptcy court dismissed her case, meaning her debts never were discharged in bankruptcy.

Slater's civil action fared no better. The district court granted U.S. Steel's motion for summary judgment, applying the doctrine of judicial estoppel to bar her claims. The court rejected Slater's arguments that her omission of the civil claims in the bankruptcy proceeding was inadvertent and that she never intended to thwart the judicial process. The court explained that under our circuit precedent, a failure to disclose is "'inadvertent' *only* when . . . the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Order at 11 (emphasis added) (Doc. 89)[1] (quoting *Barger*, 348 F.3d at 1295-96).

The district court found that Slater knew about her civil claims, filed in 2009, when she completed the bankruptcy disclosures in 2011 and that she had a motive to conceal the claims "to defraud creditors into accepting her [bankruptcy] case as one involving no assets for distribution despite the real possibility with the impending trial of the discrimination case that she could soon be receiving a money settlement or a money judgment in her favor." *Id.* at 12. Although Slater corrected her disclosures immediately after U.S. Steel brought the omissions to light, the district court found this fact irrelevant because "waiting until after being caught to rectify the omission is too little, too late." *Id.* Following *Burnes*,

---

[1] Citations to "Doc." refer to numbered docket entries in the district court record.

*Barger*, and their progeny, the court drew an inference that Slater intended to make a mockery of the judicial system based on its finding that she had knowledge of the undisclosed claims and a motive to conceal them.

Slater appealed.  After oral argument, a panel of this Court affirmed the district court's grant of summary judgment to U.S. Steel.  In a concurring opinion, Judge Tjoflat urged the Court to review en banc our precedent permitting the inference on which the district court relied, that a plaintiff who omitted a civil claim as an asset in bankruptcy filings necessarily intended to make a mockery of the judicial system.  *See Slater v. U.S. Steel Corp.*, 820 F.3d 1193, 1235 (11th Cir.) (Tjoflat, J., concurring) (explaining that our precedent validating such an inference "guarantees the very mockery of justice the doctrine of judicial estoppel was designed to avoid"), *reh'g en banc granted, op. vacated*, No. 12-15548 (11th Cir. Aug. 30, 2016).  We agreed to rehear the case en banc and vacated the panel opinion.

## II.   Overview of Bankruptcy Principles

Before turning to judicial estoppel, we pause for an overview of the Chapter 7 and Chapter 13 bankruptcy procedures that allow debtors to discharge their financial obligations and receive a fresh start to explain how a debtor's pending civil claim is treated in bankruptcy.  *See Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (explaining that bankruptcy is designed to give "honest but unfortunate

8

debtor[s]" the opportunity to "reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt" (internal quotation marks omitted)).  For our purposes here, the main difference between a Chapter 7 and a Chapter 13 proceeding is that creditors are paid primarily with the debtor's prepetition assets in Chapter 7 and with his postpetition earnings in Chapter 13.

"Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price:  prompt liquidation of the debtor's assets."  *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015).  When a debtor files a Chapter 7 petition, his assets, subject to certain exemptions, are immediately transferred to a bankruptcy estate. 11 U.S.C. § 541(a)(1).  The Chapter 7 trustee is responsible for selling the property in the estate and distributing the proceeds to creditors.[2]  *Id.* §§ 704(a)(1), 726. Although a Chapter 7 debtor "must forfeit virtually all his prepetition property," the bankruptcy laws give the debtor an immediate fresh start and a break from the financial past "by shielding from creditors his postpetition earnings and acquisitions."  *Harris*, 135 S. Ct. at 1835.  The debtor may keep any wages earned or assets acquired after the bankruptcy filing.  *Id.* (citing 11 U.S.C. § 541(a)(1)).

---

[2] When all the debtor's assets are exempt from the bankruptcy estate, meaning that no property is available for distribution to creditors, streamlined procedures may apply.  *See* Fed. R. Bankr. P. 2002(e).

In contrast, a debtor who proceeds under Chapter 13 may keep his prepetition property but must repay his creditors over time, generally from what he earns after filing bankruptcy. The Chapter 13 debtor proposes a plan to repay his debts over a three- or five-year period; the plan must be confirmed by the bankruptcy court. Payments under the plan "are usually made from a debtor's 'future earnings or other future income.'" *Id.* (quoting 11 U.S.C. 1322(a)(1)). In determining the sufficiency of the proposed plan payments, the bankruptcy court must consider the value of the debtor's assets because the court may confirm the plan only if the present value of the proposed repayments is "not less than the amount that would be paid" to creditors if the debtor's assets were liquidated under Chapter 7. *See* 11 U.S.C. § 1325(a)(4). If the bankruptcy court confirms the plan, the trustee generally collects a portion of the debtor's wages through payroll deduction and then distributes the withheld wages to the creditors at the plan's conclusion. *See Harris*, 135 S. Ct. at 1835. If the debtor completes his payments under the plan, his debts are discharged.[3] *See id.*

When a debtor files for bankruptcy under Chapter 13, his assets are transferred to the bankruptcy estate. *See* 11 U.S.C. § 1306(a). But after the bankruptcy plan is confirmed, the property of the estate returns to the debtor except

---

[3] If the debtor fails to make payments due under a Chapter 13 plan, he may be forced to convert to a Chapter 7 proceeding or the court may dismiss his bankruptcy case entirely. *See* 11 U.S.C. § 1307(a)-(c).

as provided in the plan or order confirming the plan. *See id.* § 1327(b).  A Chapter 13 debtor generally is permitted to retain his assets, such as his home or car. *See Harris*, 135 S. Ct. at 1835.

Given these differences, when a debtor's assets include a civil claim, the claim will be treated differently depending upon whether the bankruptcy is a Chapter 7 or a Chapter 13 proceeding.  Because a Chapter 7 debtor forfeits his prepetition assets to the estate, only the Chapter 7 trustee, not the debtor, has standing to pursue a civil legal claim unless the trustee abandons the asset, which then returns the claim to the possession and control of the debtor. *See Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004).  But a Chapter 13 debtor retains standing to continue to pursue the civil claim. *See* 11 U.S.C. § 1303; Fed. R. Bankr. P. 6009 ("With or without court approval, the . . . debtor in possession may prosecute . . . any pending action or proceeding by . . . the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.").  Thus, a Chapter 13 debtor may continue to control the lawsuit and the terms of any settlement. *See Crosby v. Monroe Cty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004).  With these bankruptcy principles and distinctions in mind, we now turn to the doctrine of judicial estoppel.

11

### III.  Judicial Estoppel Analysis

The precise issue before us is how the doctrine of judicial estoppel should be applied when a plaintiff fails to identify a pending civil claim as an asset in a bankruptcy proceeding.  To address this issue, we begin by reaffirming that a district court may apply judicial estoppel when a two-part test is satisfied:  the plaintiff (1) took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of the civil lawsuit and (2) intended to make a mockery of the judicial system.[4]

We then discuss how a district court should apply the second prong.  Our precedent has, in effect, treated the fact of the plaintiff's omission as establishing the requisite intent.  Today we clarify that the district court must consider all the facts and circumstances in determining whether the plaintiff acted with the intent to make a mockery of the judicial system.

### A.    To Invoke Judicial Estoppel in the Bankruptcy Scenario, District Courts Should Continue to Apply Our Two-Part Test.

The equitable doctrine of judicial estoppel is intended to "prevent the perversion of the judicial process" and "protect [its] integrity . . . by prohibiting parties from deliberately changing positions according to the exigencies of the

---

[4] Because judicial estoppel is an equitable doctrine, we review the district court's decision to apply the doctrine for abuse of discretion.  *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Talavera v. Sch. Bd. of Palm Beach Cty.*, 129 F.3d 1214, 1216 (11th Cir. 1997).

moment." *New Hampshire*, 532 U.S. at 749-50 (citations and internal quotation marks omitted); *see also* 18 James Wm. Moore et al., *Moore's Federal Practice* ¶ 131.13[6] (3d ed. 2015) (explaining that doctrine of judicial estoppel is concerned with "the orderly administration of justice and regard for the dignity of court proceedings"). When a party does so, the doctrine of judicial estoppel allows a court to exercise its discretion to dismiss the party's claims. *See New Hampshire*, 532 U.S. at 750. Stated simply, the doctrine of judicial estoppel rests on the principle that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477 (1981)).

Our circuit employs a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were "calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285 (internal quotation marks omitted). Under this test, a district court considers both the plaintiff's actions—whether he made inconsistent statements—and his motive—whether he intended to make a mockery of the judicial system. Judicial estoppel

13

should not be applied when the inconsistent positions were the result of "inadvertence[] or mistake" because judicial estoppel "looks towards cold manipulation and not an unthinking or confused blunder." *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973).[5]

Before we formulated our two-part test in *Burnes*, the United States Supreme Court addressed the doctrine of judicial estoppel in *New Hampshire v. Maine*, which concerned a boundary dispute between the two states. Availing itself of the Supreme Court's original jurisdiction, New Hampshire sought a declaration that the low water mark of a river on Maine's shore was the boundary between the two states. 532 U.S. at 745, 747. Maine moved to dismiss the case, arguing that judicial estoppel should bar New Hampshire's action because in previous litigation between the two states New Hampshire had agreed to a consent decree that set the boundary at the middle of the river's main channel of navigation. *Id.* at 748. The Supreme Court applied judicial estoppel to bar New Hampshire's later attempt to claim more land by arguing for a different boundary. *Id.* at 749.

The Court announced a three-part test that "typically inform[s]" the decision whether to apply the judicial estoppel doctrine: (1) "a party's later position must

---

[5] Decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981 are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

14

be clearly inconsistent with its earlier position"; (2) the party had to "succeed[] in persuading a court to accept that party's earlier position, so that judicial acceptance of" the party's later position "would create the perception that either the first or the second court was misled"; and (3) the party "seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51 (internal quotation marks omitted). Additionally, the Court recognized that judicial estoppel should not be applied "when a party's prior position was based on inadvertence or mistake." *Id.* at 753 (internal quotation marks omitted). Although the Court announced this three-part test, it emphasized that it was "not establish[ing] inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751.[6]

Slater argues that we must abandon our test for applying judicial estoppel in favor of the *New Hampshire* test. In *New Hampshire*, though, the party seeking to apply judicial estoppel, Maine, was a party to the prior lawsuit in which New Hampshire had taken an inconsistent position. *See id.* at 745. The Supreme Court

---

[6] The Supreme Court concluded that all three parts of the test were satisfied: New Hampshire had taken inconsistent positions by changing its argument about the location of the boundary, it had succeeded in persuading the Supreme Court to accept its earlier position when the Court accepted the parties' agreement about the location of the boundary and entered a consent decree, and it would gain an unfair advantage at Maine's expense if permitted to seek to move the boundary. *See New Hampshire*, 532 U.S. at 751-55. And "New Hampshire's position" could not "be regarded as a product of inadvertence or mistake." *Id.* at 753.

15

was not presented with—and so did not address—the question of how judicial

estoppel should be applied when the party seeking to invoke the doctrine was not a

party to the other proceeding.  Here, because the party seeking to invoke judicial

estoppel, U.S. Steel, was not a party to the bankruptcy case and could not have

been unfairly disadvantaged by any position Slater took in that case, we conclude

that *New Hampshire* is inapplicable.  Consistent with *New Hampshire's*

recognition that its test was not exhaustive, we adhere to our two-part test in the

scenario before us.[7]

B.    **Under Our Precedent, a Plaintiff Who Omitted a Civil Claim in a Bankruptcy Filing Is Deemed to Have Intended to Make a Mockery of the Judicial System.**

Turning back to our two-part test for applying judicial estoppel, the first part

is satisfied because Slater took an inconsistent position under oath in her

bankruptcy proceeding.  We focus today on the second part: how a court should

determine whether a plaintiff intended make a mockery of the judicial system.

In *Burnes* and *Barger*, we endorsed an inference that a plaintiff who failed to

disclose a lawsuit in a Chapter 7 bankruptcy intended to manipulate the judicial

---

[7] We note that other circuits have taken a similar approach in not rigidly adhering to the *New Hampshire* test (that is, considering different factors) when the party seeking to invoke judicial estoppel was not a party to the case in which the other party took an inconsistent position.  *See, e.g.*, *Stephenson v. Malloy*, 700 F.3d 265, 273 (6th Cir. 2012) (considering whether debtor who omitted lawsuit in bankruptcy disclosures had acted in bad faith); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 325 (3d Cir. 2003) (considering, as part of judicial estoppel test, whether a lesser sanction would have remedied the damage done by the litigant's misconduct).

system because the omission was not inadvertent.  In effect, we treated the fact that the plaintiff could potentially benefit from the nondisclosure as sufficient to establish that the plaintiff, in fact, intended to deceive the court and manipulate the proceedings.  And we subsequently extended that reasoning to cases involving Chapter 13 debtors as well.[8]

### 1.  *Burnes v. Pemco Aeroplex, Inc.*

In *Burnes*, we held that a district court did not abuse its discretion in applying judicial estoppel to bar plaintiff Levi Billups's claims in a civil lawsuit when he failed to disclose those claims as assets in his bankruptcy filings.  *See* 291 F.3d at 1286-88.  After Billups filed for Chapter 13 bankruptcy, he sued his employer, Pemco, for racial discrimination, but never amended his bankruptcy disclosures to identify the lawsuit.  When Billups later sought to convert the Chapter 13 petition into a Chapter 7, the bankruptcy court ordered him to update his schedules to reflect changes since the original filing.  He nevertheless failed to report his pending lawsuit and then received a no-asset discharge of his debts under Chapter 7.  After the bankruptcy was closed, Pemco moved for summary judgment based on judicial estoppel.  *Id.*  The district court granted the motion, and we affirmed.  *Id.* at 1284, 1289.

---

[8] *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275-76 (11th Cir. 2010); *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291-92 (11th Cir. 2003).

In reviewing the district court's application of judicial estoppel, we applied our two-part test inquiring whether the debtor took an inconsistent position under oath in another proceeding and whether the inconsistency was calculated to make a mockery of the judicial system. *Id.* at 1285. Because it was beyond dispute that Billups had taken inconsistent positions about the existence of his civil claims, we characterized the issue on appeal as "one of intent." *Id.* at 1286.

Billups argued that he lacked the requisite intent to mislead the court. Looking to decisions of other circuits, we concluded that the district court permissibly drew an inference that Billups had engaged in intentional manipulation. *See id.* at 1287. Obviously Billups knew about his civil claims, which he was pursuing in a separate action. And an incentive existed to hide the lawsuit from his creditors because it was "unlikely he would have received the benefit of . . . a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages." *Id.* at 1288. We permitted the inferential leap from Billups's potential motive to hide the lawsuit to the conclusion that he in fact acted with such a motive and thus intended to manipulate the proceedings.

Billups also argued that the doctrine of judicial estoppel should not be applied because he could reopen his bankruptcy case and amend his filings to disclose the lawsuit. We rejected this argument, explaining that a debtor should

18

not be permitted to escape judicial estoppel simply by correcting his nondisclosure once it has been discovered.  Because "[t]he success of our bankruptcy laws requires a debtor's full and honest disclosure," we reasoned, a debtor cannot "back-up, re-open the bankruptcy case, and amend his bankruptcy filings" after his adversary raises judicial estoppel.  *Id.*  Allowing the debtor to proceed in these circumstances, we said, would "suggest[] that a debtor should consider disclosing potential assets only if he is caught concealing them," which "would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure" of assets.  *Id.*

### 2.  *Barger v. City of Cartersville*

In *Barger*, a 2-1 decision, the panel majority followed *Burnes* in holding that a district court did not abuse its discretion when it found, based solely on the debtor's failure to disclose her civil claims in her bankruptcy proceedings, that she intended to make a mockery of the judicial system.  *See Barger*, 348 F.3d at 1297.  After Barger was demoted, she brought employment discrimination claims against her employer, the City of Cartersville, seeking money damages and reinstatement to her earlier position.  While her lawsuit was pending, Barger filed for Chapter 7 bankruptcy but omitted her civil claims from her disclosures.  *Id.* at 1291.  Barger had told both her bankruptcy attorney and the trustee that she had a pending lawsuit against the City, in which she sought reinstatement to her former position,

19

but she had failed to mention that she also sought damages. *Id.* After Barger received a no-asset discharge of her debts, the City moved for summary judgment based on judicial estoppel. Barger then asked the bankruptcy court to reopen her case so that she could disclose her employment discrimination claims. *Id.* at 1291-92. After a hearing in which the City participated, the bankruptcy court permitted Barger to reopen and allowed the trustee to pursue the claims against the City, finding that Barger had neither intentionally concealed the discrimination claims nor sought to obtain an advantage for herself by failing to disclose them. *Id.* Nonetheless, the district court applied judicial estoppel to bar the claims. *Id.* at 1292.

The panel majority affirmed the district court's application of judicial estoppel and, following *Burnes*, conflated the inquiry into whether Barger had acted voluntarily with the inquiry into whether she intended to make a mockery of the judicial system. *See id.* at 1294. To determine whether Barger had the requisite intent, the panel majority considered whether her nondisclosure was "inadvertent" by looking to whether she knew about the undisclosed claims and had a motive to conceal them. *Id.* at 1295-96. As to motive, the panel majority recognized that a debtor who omitted such a claim would be able to "keep any proceeds for herself and not have them become part of the bankruptcy estate." *Id.* at 1296.

20

The dissent in *Barger* objected to the panel majority's analysis of Barger's intent to make a mockery of the judicial system. *Id.* at 1298 (Barkett, J., dissenting). The dissent argued that the majority had improperly treated the fact that Barger's omission was not "inadvertent" as sufficient to establish that she had intended to mislead the court. *See id.* (explaining that the "failure to meet the specific inadvertence criteria" does not "automatically impl[y] an intent to make a mockery of the judicial system" (internal quotation marks omitted)). The dissent urged that courts should look to "all of the circumstances of [the] particular case" to determine whether the debtor had the requisite intent. *Id.* at 1297-98 (internal quotation marks omitted).

### 3.  Cases Post *Burnes* and *Barger*

Even though *Burnes* and *Barger* both involved Chapter 7 bankruptcies, we have extended their reasoning to cases involving Chapter 13 debtors. *See De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1292 (11th Cir. 2003) (holding that because Chapter 13 debtor "knew about his [civil] claim and possessed a motive to conceal it[,] . . . we can infer from the record his intent to make a mockery of the judicial system" (internal quotation marks omitted)). We acknowledged that a Chapter 13 debtor would always have a potential motive to conceal a civil claim from creditors so as to "keep the proceeds for herself and den[y] the creditors a fair opportunity to

21

claim what was rightfully theirs." *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275-76 (11th Cir. 2010).

It is true that in two panel decisions after *Burnes* and *Barger* we applied judicial estoppel more narrowly, but these decisions cannot be reconciled with our prior precedent. First, in *Parker*, we reversed the district court's application of judicial estoppel to bar an employment discrimination claim that a debtor failed to disclose as an asset in his Chapter 7 bankruptcy petition. 365 F.3d at 1269. We said that judicial estoppel should not be applied in that case because when the debtor filed Chapter 7 bankruptcy, the trustee, as representative of the bankruptcy estate, became "the proper party in interest, and . . . the only party with standing to prosecute causes of action belonging to the estate." *Id.* at 1272. We held that because the trustee was the real party in interest in the civil lawsuit, had never taken an inconsistent position under oath, and had not abandoned the discrimination claim, the district court abused its discretion in applying judicial estoppel. *Id.* As the panel in the case before us recognized, *Parker* cannot be reconciled with our decision in *Barger*, in which we upheld the application of judicial estoppel to bar civil claims that the Chapter 7 debtor failed to disclose, even though we acknowledged that the trustee was the real party in interest.

Second, in *Ajaka v. Brooksamerica Mortgage Corp.*, 453 F.3d 1339 (11th Cir. 2006), we looked beyond a Chapter 13 debtor's failure to disclose a civil

22

lawsuit to determine whether the debtor actually intended to make a mockery of judicial proceedings.  After filing a Chapter 13 petition, Ajaka filed a Truth in Lending Act claim against his mortgage lender.  *Id.* at 1342.  Ajaka directed his bankruptcy attorney to amend his bankruptcy schedules to disclose the lawsuit, but his attorney failed to do.  *Id.* at 1343.  Because Ajaka had failed to disclose his claim to the bankruptcy court, the lender moved for summary judgment based on judicial estoppel.  Even though the record showed that all the creditors were aware of Ajaka's civil claims against the lender before the lender raised judicial estoppel, the district court found that Ajaka intended to make a mockery of the judicial system.  *Id.*  We reversed and held that the district court abused its discretion in applying judicial estoppel when there was a question of material fact about whether Ajaka had an intention to conceal his civil claim from his creditors.  We relied in part on the fact that he had subsequently amended his bankruptcy schedules.  *Id.* at 1346.

*Ajaka* cannot be squared with *Burnes* and *Barger*, which looked solely to whether the debtor omitted a claim to determine the debtor's intent.  Given the flaws in our reasoning in *Burnes* and *Barger* and the inconsistencies in our precedent, we now address how district courts should evaluate a debtor's intent.

23

**C.    Deciding Whether a Plaintiff Intended to Make a Mockery of the Judicial System Requires Review of the Totality of the Facts and Circumstances.**

We hold that to determine whether a plaintiff's inconsistent statements were calculated to make a mockery of the judicial system, a court should look to all the facts and circumstances of the particular case.  When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.[9]  We overrule the portions of *Burnes* and *Barger* that permitted the inference that a plaintiff intended to make a mockery of the judicial system simply because he failed to disclose a civil claim.[10]

---

[9] We emphasize that this list is not exhaustive; the district court is free to consider any fact or factor it deems relevant to the intent inquiry.

[10] We do not overrule these cases entirely.  Specifically, our decision today has no effect on the portion of *Burnes* holding that judicial estoppel did not apply to bar the debtor's injunctive relief claims, 291 F.3d at 1288-89, or the portions of *Barger* addressing standing, estoppel, and the application of judicial estoppel to the debtor's claim for injunctive relief, 348 F.3d at 1292-93, 1297.

24

Three reasons lead us to reject the inference we accepted in *Burnes* and *Barger* in favor of a rule that a district court should look to all the circumstances of the case. First, such an inquiry ensures that judicial estoppel is applied only when a party acted with a sufficiently culpable mental state. Second, it allows a district court to consider any proceedings that occurred in the bankruptcy court after the omission was discovered, arguably a better way to ensure that the integrity of the bankruptcy court is protected. Third, limiting judicial estoppel to those cases in which the facts and circumstances warrant it is more consistent with the equitable principles that undergird the doctrine. By rejecting a one-size-fits-all approach, we reduce the risk that the application of judicial estoppel will give the civil defendant a windfall at the expense of innocent creditors.

First, a district court should look to all the facts and circumstances of the case to decide whether a plaintiff intended to mislead the court because that question is separate from and not answered by whether the plaintiff voluntarily, as opposed to inadvertently, omitted assets. Our decisions in *Burnes* and *Barger* conflated the question of whether the plaintiff's omission was inadvertent with the separate question of whether the plaintiff actually intended to manipulate the judicial system to his advantage.

After all, a plaintiff may have failed to disclose a pending lawsuit because he did not understand the disclosure obligations. It is not difficult to imagine that

25

some debtors, particularly those proceeding *pro se*,[11] may not realize that a pending lawsuit qualifies as a "contingent and unliquidated claim" that must be disclosed on a schedule of assets. Although the question asking for a list of "all suits and administrative proceedings to which the debtor is or was a party" seems more straightforward, as Slater's testimony shows, it nevertheless may be misunderstood.[12] So it makes sense that a district court should look beyond a plaintiff's omission in determining whether the plaintiff intended to misuse the judicial process.

Second, a broader inquiry allows a district court to consider any findings or other actions by the bankruptcy court that might help in determining whether the debtor purposely intended to mislead the court and creditors. We have justified applying judicial estoppel after a debtor omitted a claim from his bankruptcy disclosures as necessary to ensure full and honest disclosure to the bankruptcy courts and protect "the effective functioning of the federal bankruptcy system." *Burnes*, 291 F.3d at 1286 (internal quotation marks omitted). But we have overlooked that bankruptcy courts do not necessarily view such omissions as establishing a debtor's intent to mislead the bankruptcy court.

---

[11] In 2015, 9.2% of Chapter 7 and 8.5% of Chapter 13 petitions nationwide were filed by debtors proceeding *pro se*. Michael B. Joseph, *Consumer Pro Se Bankruptcy: Finding Hope in Hopelessness*, 35 Am. Bankr. Inst. J. 32, 32 (May 2016).

[12] Of course, the district court may determine that a plaintiff's testimony that he misunderstood the disclosure obligations is not credible.

To the contrary, the Bankruptcy Code and Rules liberally permit debtors to amend their disclosures when an omission is discovered. Yes, the Bankruptcy Code requires debtors to disclose all their assets, including contingent and unliquidated claims. *See* 11 U.S.C. § 521(a)(1)(B) (requiring debtor to file a schedule of assets and liabilities). But Bankruptcy Rule 1009, which was proposed by the Supreme Court and adopted by Congress, permits a debtor to amend a schedule or statement "as a matter of course at any time before the case is closed." Fed. R. Bankr. R. P. 1009(a). Further, the bankruptcy court retains broad discretion to reopen a closed case on a motion of the debtor or another party in interest "to administer" an asset that had not previously been scheduled. 11 U.S.C. § 350(b). It strikes us as inconsistent with these principles—which recognize that omissions occur and liberally allow amendment and correction of disclosures—to infer that a debtor who failed to disclose a lawsuit necessarily meant to manipulate the bankruptcy proceedings.

We see no good reason why, when determining whether a debtor intended to manipulate the judicial system, a district court should not consider the bankruptcy court's treatment of the nondisclosure. We reject the idea that encouraging a district court to blind itself to subsequent proceedings in the bankruptcy court, particularly the bankruptcy court's decision about whether to allow the debtor to amend his disclosures or reopen his bankruptcy case, better protects the bankruptcy

27

system.  Indeed, the bankruptcy court has tools of its own to punish a debtor who it determines purposefully tried to hide assets.  For example, it may revoke the discharge or deny an exemption for the proceeds from the debtor's lawsuit, *see In re Barger*, 279 B.R. 900, 908 (Bankr. N.D. Ga. 2002); it may even fine or imprison a debtor for contempt or refer the matter for the United States Attorney's Office to consider prosecuting the debtor for perjury.  *See* 18 U.S.C. §§ 401, 1621.[13]

Third, considering all the circumstances of the case is more consistent with the equitable principles that underlie the doctrine of judicial estoppel.  "Equity eschews mechanical rules" and "depends on flexibility."  *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946).[14]  Requiring the district court to consider all facts and circumstances in evaluating the plaintiff's intent is the more flexible, less mechanical approach that equity demands.  In addition, this approach reduces the likelihood that an otherwise liable civil defendant will receive an unjustified windfall or that innocent creditors will be harmed.

---

[13] U.S Steel argues that judicial estoppel is also necessary to protect the integrity of district courts from plaintiffs who pursue civil claims that they implicitly admitted in their bankruptcy proceedings were worthless. It posits that a plaintiff may omit a civil claim from his bankruptcy disclosures because he knew it was worthless, yet attempt to commit a fraud on the district court by trying to persuade the court that the claim has value.  But under the rule we adopt today, a district court may apply judicial estoppel if it decides that the plaintiff intended to manipulate the judicial process in either court; it simply must consider the totality of the facts and circumstances before making that determination.

[14] *See also DelCostello v. Int'l Bros. of Teamsters*, 462 U.S. 151, 162 (1983) (explaining that principles of equity are hostile to "mechanical rules" (internal quotation marks omitted)); *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964) (explaining that whether a court should exercise its discretionary equitable powers should not depend on an "automatic rule").

When a district court applies a judicial estoppel bar based on nondisclosure in a bankruptcy proceeding without determining that the plaintiff deliberately intended to mislead, the civil defendant avoids liability on an otherwise potentially meritorious civil claim while providing no corresponding benefit to the court system.  As an equitable doctrine, judicial estoppel should apply only when the plaintiff's conduct is egregious enough that the situation "demand[s] equitable intervention."  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944).  When a plaintiff intended no deception, judicial estoppel may not be applied.  If a court applies judicial estoppel to bar the plaintiff's claim absent such intent, it awards the civil defendant an unjustified windfall.[15]  Just as equity frowns upon a plaintiff's pursuit of a claim that he intentionally concealed in bankruptcy proceedings, equity cannot condone a defendant's avoidance of liability through a doctrine premised upon intentional misconduct without establishing such misconduct.  *See Coral Springs St. Sys, Inc. v. City of Sunrise*, 371 F.3d 1320,

---

[15] U.S. Steel contends that civil defendants receive no "pure windfall" if judicial estoppel is applied as the district court did here because they receive only the "incidental benefit" of escaping civil liability in exchange for providing the valuable service of "exposing abuses of the bankruptcy system."  Appellee's Br. at 52-53 (internal quotation marks omitted).  But only when the plaintiff intended to mislead is the defendant exposing an abuse of the system.

In a similar vein, U.S. Steel argues that unless courts apply judicial estoppel consistent with our existing precedent, civil defendants will have no incentive to uncover omissions of civil lawsuits in bankruptcy filings, and such omissions will go undetected.  Not so.  Civil defendants like U.S. Steel will still have an incentive to research and discover whether the plaintiff failed to disclose a civil claim because the court may apply judicial estoppel if the facts and circumstances of the case show that the plaintiff had the requisite intent to deceive.  In addition, the plaintiff's nondisclosure may provide fodder for cross examination and impeachment in the civil suit.

1340-41 (11th Cir. 2004) (explaining that a court of equity must "promote and enforce justice, good faith, uprightness, fairness, and conscientiousness" from both plaintiff and defendant (internal quotation marks omitted)).

What is more in this circumstance, the application of judicial estoppel poses a potential risk of harm to innocent creditors. When a civil claim is dismissed on the basis of judicial estoppel, the asset becomes worthless—losing any potential to increase the value of the bankruptcy estate—which in turn harms creditors. It is easy to see why in Chapter 7 proceedings: the trustee is responsible for liquidating the assets in the estate and then distributing the proceeds to creditors. When the civil claim is dismissed, there can be no proceeds from a recovery or settlement for distribution to creditors. *See* 11 U.S.C. §§ 704(a)(1), 726.[16]

Although not as apparent for Chapter 13 proceedings, a risk remains that the dismissal will harm creditors. The amount of proceeds that creditors receive in a Chapter 13 bankruptcy is dictated by the confirmed plan, and a debtor's payments under the plan are generally based upon the debtor's expected future earnings. *See Harris*, 135 S. Ct. at 1835. But a plan can be confirmed only if the payments to the creditors are either equal to or exceed what the creditors would have received in a

---

[16] As we observed above, our holding in *Parker* that judicial estoppel should not apply against a Chapter 7 trustee conflicted with *Barger*. Because we overrule that portion of *Barger*, *Parker* no longer conflicts with prior panel precedent, and so there is no question about its continued viability.

Chapter 7 bankruptcy, meaning that the value of a civil claim is taken into account in formulating and reviewing the plan. *See* 11 U.S.C. § 1325(a)(4). If the debtor, trustee, creditors, and bankruptcy court know that a civil claim is likely to be dismissed based on judicial estoppel, they are likely to treat the claim as worthless, depriving the bankruptcy estate of what (absent judicial estoppel) might have been a valuable asset. Because the application of judicial estoppel may harm innocent creditors, equitable principles dictate that courts proceed with care and consider all the relevant circumstances.

In the face of these compelling reasons why district courts should consider the totality of the facts and circumstances of the case to determine whether a plaintiff intended to make a mockery of the judicial system, U.S. Steel urges us to adhere to *Burnes* and *Barger*. First, U.S. Steel argues that no change to our precedent is required because even when a district court finds that the plaintiff intended to manipulate the judicial system, the court remains "entirely free to find in particular circumstances that a debtor's omission was inadvertent." Appellee's Br. at 3. But U.S. Steel overlooks that under our case law an omission of a claim is "'inadvertent' *only* when a [debtor] either lacks knowledge of the undisclosed claim or has no motive for [its] concealment." *Barger*, 348 F.3d at 1295 (emphasis added). No plaintiff who omitted civil claims from bankruptcy disclosures will be able to show that he acted inadvertently because, as we explained above, the

31

plaintiff always will have knowledge of his pending civil claim and a potential motive to conceal it due to the very nature of bankruptcy. The Supreme Court has told us that judicial estoppel must not be applied to an inadvertent inconsistency, *New Hampshire*, 532 U.S. at 753, yet under our precedent inadvertence places no meaningful limit on the doctrine's application.

Second, U.S. Steel argues that by overruling *Burnes* and *Barger*, we will create a circuit split. In fact, a circuit split exists regardless. The approach we adopt today is consistent with the decisions of at least three other circuits, which have recognized that whether a plaintiff intended to make a mockery of the judicial system requires consideration of more than just whether the plaintiff failed to disclose a claim.[17] Other circuits, consistent with *Burnes* and *Barger*, have endorsed the inference that a plaintiff who omitted a claim necessarily intended to manipulate the judicial system.[18] For the reasons we have already discussed, we

---

[17] *See Spanie v. Cmty. Contacts, Inc.*, 756 F.3d 542, 548 (7th Cir. 2014) (reversing application of judicial estoppel because the civil defendant "needed to show more than an initial nondisclosure on a bankruptcy schedule"); *Ah Quin v. Cty. of Kauai Dep't. of Transp.*, 733 F.3d 267, 276 (9th Cir. 2013) (rejecting a "presumption of deceit" where "the plaintiff-debtor has reopened the bankruptcy proceedings and has corrected the initial filing error"); *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 899 (6th Cir. 2004) (reversing district court's application of judicial estoppel where plaintiffs omitted the claim because defendant "provide[d] no additional evidence that Plaintiffs demonstrated fraudulent intentions towards the court").

[18] *See, e.g.*, *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157-60 (10th Cir. 2007) ("Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio*, infer deliberate manipulations."); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335-36 (5th Cir. 2004) (concluding that judicial estoppel applied because plaintiffs knowingly omitted civil claim from bankruptcy disclosures).

find the analysis of the Sixth, Seventh, and Ninth Circuits to be more persuasive and conclude that theirs is the better approach.[19]

We thus overrule our prior precedent approving the inference that a plaintiff intended to make a mockery of the judicial system solely because he failed to disclose his civil claim in his bankruptcy.  Instead, district courts should consider all the facts and circumstances of the case to determine whether the debtor had the requisite intent.

## IV.  Conclusion

Having identified the proper standard for determining when judicial estoppel may be applied, we remand this appeal to the panel to consider whether the district court abused its discretion in applying judicial estoppel and to resolve any other remaining issues.

**REMANDED.**

---

[19] U.S. Steel also argues that *stare decisis* requires us to adhere to our precedent, but the en banc court may overrule panel decisions.  *See McKinney v. Pate*, 20 F.3d 1550, 1565 n.21 (11th Cir. 1994) (en banc).

ED CARNES, Chief Judge, concurring:

I concur in the majority opinion for the Court, especially in light of footnote 12, which acknowledges that a district court is not required to accept the testimony of the plaintiff that her misstatements in the bankruptcy proceeding were not made with intent to mislead, even if that testimony is uncontradicted.

This is in keeping with the long-established law of this circuit. See, e.g., Burston v. Caldwell, 506 F.2d 24, 26 (5th Cir. 1975) ("The district court, of course, was not required to accept [the petitioner's] testimony, even if uncontradicted."); Negron v. City of Miami Beach, 113 F.3d 1563, 1570 (11th Cir. 1997) (noting that the district court as factfinder was free to reject an expert witness' testimony even if it was uncontradicted); Murphy v. City of Flagler Beach, 846 F.2d 1306, 1310 (11th Cir. 1988) (explaining that the factfinder "was not bound to accept the plaintiff's evidence . . . even if it was not controverted"); see also United States v. Samples, 897 F.2d 193, 198 (5th Cir. 1990) ("The trier of fact need not credit any witness' testimony, even if unimpeached.").

We have taken the principle even further than that. In criminal cases, "[w]e have long recognized that a statement by a defendant, if disbelieved by the jury, may be considered substantive evidence of the defendant's guilt." United States v. Tobin, 676 F.3d 1264, 1287 (11th Cir. 2012) (quotation marks omitted), abrogated on other grounds by United States v. Davila, 569 U.S. __, 133 S. Ct. 2139 (2013);

34

United States v. Martinez, 83 F.3d 371, 374 (11th Cir. 1996) ("But the jury was entitled to reject Martinez's testimony and to consider it as substantive evidence of his guilt."). And "this rule applies with special force," we have stressed, "where the element to be proved is the defendant's knowledge or intent." Martinez, 83 F.3d at 374–75; accord United States v. Vazquez, 53 F.3d 1216, 1225 (11th Cir. 1995) (noting that the rule a factfinder, after observing a defendant testify, can infer that the opposite of her testimony is true "applies with special force where the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge").

All of those decisions are particularly important in light of our holding today that judicial estoppel will bar a claim not disclosed by the plaintiff in her bankruptcy proceeding only if the omission was done with the intent to mislead. The intent behind an inaccurate or misleading statement or omission is a purely subjective fact that can seldom be proven by objective facts alone. People who have defrauded others through misleading bankruptcy schedules, which are signed under penalty of perjury, have committed a crime. It is a small step from original perjury to cover-up perjury.

If district courts were required to accept a plaintiff's testimony that she did not intend to defraud her creditors by omitting a claim from her bankruptcy schedules, judicial estoppel never would be applied in these circumstances. The

possibility that the doctrine could apply to claims not disclosed in bankruptcy proceedings would be purely academic and serve no deterrent purpose.  And if debtors were freed from any threat of judicial estoppel, the losers would be both honest creditors and the integrity of the judicial process, which means we all would lose.

That is why the one sentence contained in footnote 12 is so important.  It means that in deciding whether a plaintiff intended to mislead when she omitted a claim from her bankruptcy schedules, or failed to update a schedule to include the claim, the district court is not required to accept the plaintiff's denial of her intent.  And that is true even if her denial is made under oath and not contradicted by other evidence.  The district court has the authority and responsibility to find the facts and not to blindly accept testimony.