[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10842
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-21874-KMM


CUTHBERT HAREWOOD,

Plaintiff - Appellant,

versus

MIAMI-DADE COUNTY,
JOHN ALEXANDER,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 3, 2019)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Cuthbert Harewood appeals the district court's order granting John Alexander summary judgment on judicial estoppel grounds.  Harewood brought this action against Officer Alexander and Miami-Dade County, alleging claims under 42 U.S.C. § 1983 for excessive force, false arrest, and retaliation, arising from Alexander's deployment of his taser to subdue Harewood.  The district court ruled that the equitable doctrine of judicial estoppel barred Harewood's claims based on his failure to disclose them as assets in Chapter 13 bankruptcy proceedings filed prior to the filing of this lawsuit.  The district court found that by omitting the claims when he amended his bankruptcy disclosures, Harewood intended to make a mockery of the judicial system.  On appeal, Harewood argues that in making this finding the district court erred by failing to consider facts in the record and by identifying inconsistencies in the record where none existed.  After careful review, we conclude that the district court committed no abuse of discretion.  We therefore affirm.

## I.    BACKGROUND

In July 2013, Harewood was standing near real property he owned when his common-law wife, Myrlie Coleman, arrived in her vehicle.  Harewood approached the driver's side window and began speaking with Coleman.  Alexander, an officer in the Miami-Dade Police Department, then pulled behind the vehicle and instructed Harewood to step away.  Harewood retreated as instructed while he and

Alexander exchanged words.  Alexander then forced Harewood to the ground and tased him three times.

Harewood sued Alexander and Miami-Dade County in Florida state court in April 2015.  The operative complaint, Harewood's second amended complaint, alleged several claims under § 1983 based on Alexander's allegedly unjustified and excessive taser use.  Miami-Dade removed the action to federal district court and then filed a motion to dismiss.  The district court granted the motion and dismissed without prejudice all claims brought against Miami-Dade County.[1]  Alexander answered the complaint, and the claims against him proceeded to discovery.

After discovery, Alexander moved for summary judgment on the sole ground that judicial estoppel barred Harewood's claims based on Harewood's failure to disclose them as contingent assets in two bankruptcy proceedings filed before Harewood's § 1983 lawsuit was filed.  Harewood filed a voluntary petition for Chapter 13 bankruptcy in January 2013 and another one in 2014.  The first petition was filed before the tasing incident; the second was filed after.  When asked in each petition under penalty of perjury in "Schedule B-Personal Property" to identify any "contingent and unliquidated claims," he answered "none."  Schedule B - Personal Property, *In re Harewood*, No. 14-28291-AJC (Bankr. S.D.

---

[1] Harewood does not appeal the district court's dismissal of the claims brought against Miami-Dade.

Fla. Sept. 11, 2014), ECF No. 15; Schedule B - Personal Property, *In re Harewood*, No. 13-10890-AJC (Bankr. S.D. Fla. May 14, 2013), ECF No. 17. When he filed amended schedules in each proceeding in August 2013 and March 2015, respectively, he similarly failed to disclose the § 1983 claims. Schedule B - Personal Property, *In re Harewood*, No. 13-10890-AJC (Bankr. S.D. Fla. August 15, 2013), ECF No. 69; *see* Amended Summary of Schedules, *In re Harewood*, No. 14-28291-AJC (Bankr. S.D. Fla. Mar. 11, 2015), ECF No. 45 (omitting an amended Schedule B). Harewood did, however, disclose in his bankruptcy filings several lawsuits against him that sought to collect money judgments against him. Harewood's 2013 bankruptcy was dismissed in November 2013. His 2014 bankruptcy was confirmed in April 2015 but then dismissed in November 2015.

In response to Alexander's summary judgment motion, Harewood argued that he had informed his bankruptcy attorney, Alberto Cardet, of his claims against Alexander and Miami-Dade. Harewood testified by affidavit that, by late 2014, "Cardet had . . . assured [him] that [his] potential civil rights lawsuit . . . had no bearing on the bankruptcy case." Doc. 89-3 at 5.[2] Along with his response, Harewood filed a motion pursuant to Federal Rule of Civil Procedure 56(d), requesting that the district court defer its ruling on Alexander's summary judgment motion until after Cardet could be deposed. In support of the Rule 56(d) motion,

---

[2] "Doc #" refers to the numbered entry on the district court's docket.

4

Harewood's present attorney, Hilton Napoleon, II, filed an affidavit describing Napoleon's efforts to secure an affidavit from Cardet and a conversation between the two attorneys. As relevant here, Napoleon testified that Cardet told him that Harewood had informed Cardet about the lawsuit but Cardet had declined to amend the bankruptcy disclosures. According to Napoleon, Cardet said he had believed at the time that Harewood had no need to disclose the § 1983 claims because Harewood's bankruptcy was a Chapter 13, the bankruptcy plan required Harewood to pay his creditors 100% of what he owed them, and there were sufficient assets to cover the liabilities.

The district court agreed with Alexander and ruled that judicial estoppel barred Harewood's claims. Based on its judicial estoppel ruling, the district court granted Alexander summary judgment. The court denied as moot Harewood's Rule 56(d) motion.

This is Harewood's appeal.

## II. STANDARDS OF REVIEW

This Court reviews a district court's application of judicial estoppel for abuse of discretion and its factual findings for clear error. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010). A district court may abuse its discretion in three ways: (1) by failing to consider a relevant factor to which it should have afforded significant weight, (2) by considering an irrelevant or

improper factor and giving it significant weight, or (3) by committing a "clear error of judgment" in weighing the proper factors. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). A district court's factual finding is clearly erroneous when the evidentiary record, viewed in its entirety, leaves the reviewing court with "a definite and firm conviction that a mistake has been committed," even though the record may contain evidence to support the finding. *Robinson*, 595 F.3d at 1275.

### III.    DISCUSSION

Harewood appeals the district court's ruling that judicial estoppel barred his claims against Alexander. Judicial estoppel is an equitable doctrine "intended to prevent the perversion of the judicial process and protect its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) (en banc) (alterations adopted) (internal quotation marks omitted). A district court should not apply judicial estoppel "when the inconsistent positions were the result of inadvertence or mistake because judicial estoppel looks towards cold manipulation and not an unthinking or confused blunder." *Id.* at 1181 (alteration adopted) (internal quotation marks omitted).

This circuit applies a two-part test to guide district courts in exercising their discretion to apply judicial estoppel: "whether (1) the party took an inconsistent

6

position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." *Id.* (internal quotation marks omitted).  The first prong is satisfied when a debtor has "fail[ed] to list a pending civil claim as an asset in a bankruptcy proceeding." *Weakley v. Eagle Logistics*, 894 F.3d 1244, 1245-46 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 836 (2019).  This prong may also be satisfied when a debtor has failed to amend her bankruptcy filings to disclose claims that arose while the bankruptcy remained pending.  *See Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (explaining that a debtor's duty to disclose extends to all potential assets).  Only the test's second prong is at issue in this appeal because Harewood does not challenge the district court's determination that he took an inconsistent position under oath in a separate proceeding.

Regarding the second prong, in *Slater v. U.S. Steel Corp.*, we articulated several factors that a court may consider when, as here, it is "determining whether a plaintiff who failed to disclose a civil lawsuit in bankruptcy filings intended to make a mockery of the judicial system."  871 F.3d at 1176-77.  These factors include but are not limited to the following:

> the plaintiff's level of sophistication, whether and under what
> circumstances the plaintiff corrected the disclosures, whether the
> plaintiff told his bankruptcy attorney about the civil claims before
> filing the bankruptcy disclosures, whether the trustee or creditors were
> aware of the civil lawsuit or claims before the plaintiff amended the
> disclosures, whether the plaintiff identified other lawsuits to which he

7

> was party, and any findings or actions by the bankruptcy court after
> the omission was discovered.

*Id.* at 1185 & n.9.  In applying these factors, the district court is not required to accept as true the plaintiff's own denial of his intent to make a mockery of the judicial system.  *Id.* at 1186 n.12.  The court must "consider the entire record," *Weakley*, 894 F.3d at 1247, and may infer from that record the party's intent, *Robinson*, 595 F.3d at 1275.  Such an inference "is considered a factual finding by the court and held to a clearly erroneous standard."  *Id.*

Here, the district court considered at least three *Slater* factors:  (1) Harewood's level of sophistication, (2) whether he told his bankruptcy attorney about the civil claims before filing or amending the bankruptcy disclosures, and (3) whether he identified in the bankruptcy proceeding other lawsuits to which he was a party.  As to the first factor, the district court determined that Harewood's testimony about his level of sophistication was inconsistent.  The court focused its analysis of Harewood's sophistication on his role in operating his and Coleman's real estate business, which rented properties owned by the couple to residential and commercial tenants.  The court explained that, on the one hand, Harewood appeared to be sophisticated based on his deposition testimony explaining the methods he used to purchase the various properties, but, on the other hand, he did not appear to be sophisticated based on his assertion that Coleman managed their real estate portfolio and he performed only trivial maintenance on the properties.

8

The district court determined that, "[a]lthough the record does support [Harewood]'s contention that he was not involved in all aspects of managing the properties he owns, [his] testimony on the matter does not support his argument that he only performed trivial maintenance on the properties." Doc. 112 at 7.

Applying the second factor, the district court identified inconsistencies in Harewood's testimony about whether he told Cardet, his bankruptcy attorney, about his claims against Alexander and Miami-Dade. Specifically, the court found that two statements in Harewood's testimony were inconsistent: (1) his statement that Cardet never explained that his claims against Alexander and Miami-Dade were "contingent, unliquidated" claims subject to disclosure on Schedule B, and (2) his statement that he told Cardet about the claims. The court explained that it therefore gave little weight to Harewood's testimony. The court did not discuss Napoleon's affidavit testimony on this issue.

On the third factor, the district court found that in the 2013 and 2014 bankruptcy proceedings Harewood had identified several other civil lawsuits against him. The court further found that Harewood understood his ongoing obligation to amend the bankruptcy disclosures, as evidenced by the fact that he once amended them to disclose yet another lawsuit in which he was a defendant. According to the district court, "[o]ne commonality shared between the lawsuits [Harewood] disclosed in the bankruptcy proceedings is that they dealt with [his]

9

liabilities—not assets." Doc. 112 at 9. The district court explained that "[t]he conclusions drawn from these facts weigh[ed] heavily in favor of judicial estoppel." *Id.*

Based on its findings on these factors, the district court determined that judicial estoppel was appropriate because Harewood "intend[ed] to make a mockery of the judicial system by attempting to shield potential assets from bankruptcy proceedings, making inconsistent statements in th[e district] court and the bankruptcy court, and . . . feigning ignorance and attempting to lay blame on his bankruptcy counsel." *Id.* at 9-10.

Harewood argues that the district court erred by: (a) failing to consider record evidence militating against the conclusion that he intended to make a mockery of the judicial system, including Napoleon's affidavit testimony that Cardet told Napoleon that Harewood informed Cardet of the potential lawsuit against Alexander and Miami-Dade but Cardet made the decision not to disclose the claims, and (b) finding inconsistencies and conflicts in the record where none existed. Alexander responds that the district court committed no abuse of discretion because it correctly applied the relevant factors and did not clearly err in its factual findings. We agree with Alexander that Harewood has failed to show that the district court's ruling was an abuse of discretion. We explain why by addressing each of Harewood's arguments in turn below.

10

**A.      Harewood Has Not Shown that the District Court Failed to Consider the Entire Record.**

Harewood argues that the district court committed reversible error by failing to consider several facts supported by record evidence, which, if credited, would have rebutted the inference that he intended to make a mockery of the judicial system.[3]  He argues that the district court failed to consider these facts because its order failed to explicitly mention them.  We disagree.  It has long been the law of this circuit that "'[i]n the absence of some affirmative indication to the contrary, we assume all courts base rulings upon a review of the entire record.'"  *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015) (quoting *Funchess v. Wainwright*, 772 F.2d 683, 694 (11th Cir. 1985)).  Harewood has not raised in his brief any indication that the district court failed to consider the entire record, other than the court's silence as to certain evidentiary materials.  This is not enough to overturn our assumption.

---

[3] Specifically, Harewood argues that the following facts showed that he was unsophisticated:  during a 2011 bankruptcy where he proceeded *pro se*, he (a) failed to provide all required documents, (b) mistakenly referred to a 2009 civil action to which he had been a party as a bankruptcy case, (c) filed grammatically incorrect motions, and (d) filed motions lacking his return address.  Harewood further argues that the following facts showed that he had no intent to make a mockery of the judicial system:  (a) during his 2014 bankruptcy, he listed liabilities worth hundreds of thousands of dollars less than what he had disclosed in the 2013 bankruptcy and amended his disclosures to add liabilities that he failed to initially disclose; and (b) he unsuccessfully attempted to contact his bankruptcy attorney and the bankruptcy trustee shortly after learning that he omitted the § 1983 claims from his bankruptcy disclosures.

11

Harewood places heavy emphasis on what he characterizes as the district court's failure to consider the Napoleon affidavit, but he has abandoned any argument for reversal based on that evidence.  Napoleon's affidavit testimony describing Cardet's statements to Napoleon amounts to hearsay because Harewood sought to prove the truthfulness of the matters Cardet described in those statements.  Fed. R. Evid. 801(c).  "[A] district court may consider a hearsay statement in passing on a motion for summary judgment [only] if the statement could be reduced to admissible evidence at trial or reduced to an admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (internal quotation marks omitted).  Thus, a court may consider on summary judgment evidence in the form of inadmissible hearsay so long as, for example, the declarant is available to testify at trial directly about the matter at issue.  *Id.* at 1294.  Here, Harewood has abandoned any argument for reversal based on the court's failure to consider the Napoleon affidavit because he has failed to explain how Napoleon's hearsay statement could be reduced to an admissible form.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").[4]

---

[4] We note that there is reason to doubt Cardet's willingness to testify at trial:  Harewood's Rule 56(d) motion sought to delay the district court's summary judgment ruling based on Cardet's unwillingness to sign an affidavit corroborating Napoleon's testimony.

12

**B.     Harewood Has Failed to Show Clear Error.**

Harewood argues that the district court erred in two respects in determining that his evidence was inconsistent.  First, he argues that his testimony was not inconsistent about his role in managing the real estate properties.  He further contends that other evidence, specifically Coleman's testimony, corroborates his account.  Second, he asserts that, contrary to the district court's finding, his testimony was consistent about whether he disclosed the § 1983 lawsuit to Cardet.

By arguing that the district court erroneously identified evidentiary inconsistencies, Harewood appears to argue that the district court clearly erred in finding that he intended to make a mockery of the judicial system because evidence regarding his role in the real estate business and whether he told Cardet about the § 1983 lawsuit contradicts that finding.  He relies on three pieces of evidence:  (1) Coleman's deposition testimony that she managed the real estate business; (2) Harewood's deposition testimony that he performed only trivial maintenance on the properties; and (3) Harewood's affidavit testimony that he told Cardet about the § 1983 lawsuit, but Cardet advised against disclosure.  We cannot conclude based on this evidence that the district court clearly erred in finding that Harewood intended to make a mockery of the judicial system.  The court was free

---

Harewood raises no argument regarding the district court's failure to rule on his Rule 56(d) motion before granting summary judgment.  We therefore do not address this issue.

to disregard Harewood's self-serving testimony in its entirety. *Weakley*, 894 F.3d at 1246.

Moreover, although the record does contain evidence that Coleman rather than Harewood bore responsibility for managing the real estate business, the record also contains evidence that Harewood did more than perform trivial maintenance on the properties. Because the evidence of Harewood's role in the business permitted two distinct inferences about Harewood's sophistication, there can be no clear error. *See Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) ("Where there are two permissible views of the evidence, the district court's choice of one of those views cannot be clearly erroneous." (internal quotation marks omitted)).

## IV.   CONCLUSION

We affirm the district court's order granting Alexander's motion for summary judgment.

**AFFIRMED.**