# United States Court of Appeals
## For the First Circuit

---

No. 10-2513

LORRAINE GUAY,

Plaintiff,

KEVIN GUAY,

Plaintiff, Appellant,

v.

THOMAS BURAK, Commissioner of the Department of Environmental
Services for the State of New Hampshire; CONCORD POLICE
DEPARTMENT; MICHAEL A. DELANEY, NH Attorney General; SEAN FORD,
Detective, Concord Police Department; CONCORD, NH,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Boudin, Selya, and Lipez, Circuit Judges.

---

Barbara Goodwin, with whom Murray, Plumb & Murray was on
brief, for appellants.
Erik G. Moskowitz, with whom Charles P. Bauer and Gallagher,
Callahan & Gartrell were on brief, for appellees.

---

April 19, 2012

---

**LIPEZ**, <u>Circuit Judge</u>.  This case requires us to apply the doctrine of judicial estoppel in somewhat unusual circumstances. While engaged in a Chapter 7 bankruptcy action, the appellant, Kevin Guay, brought numerous claims against the appellees, government officials and a police officer, seeking damages for an allegedly illegal search of his property.  Guay, however, failed to amend his bankruptcy schedules, as required, to disclose the existence of his claims as newly acquired assets prior to obtaining a discharge from bankruptcy.  As a result, the appellees moved for summary judgment on the basis of judicial estoppel, even though appellant's failure to disclose his claims did not give him an unfair advantage in this proceeding.  It was enough, appellees argued, that appellant successfully adopted a position in the bankruptcy proceeding inconsistent with the position he takes here. Agreeing, the district court granted summary judgment for appellees.  We affirm.

## I.

We recount the facts in the light most favorable to the party opposing summary judgment, in this case, the appellant. <u>Agusty-Reyes</u> v. <u>Dep't of Educ. of P.R.</u>, 601 F.3d 45, 48 (1st Cir. 2010).  For clarity's sake, our recitation of the facts is divided into subsections that describe the chronology of events in two parallel actions.

## A.  Bankruptcy Proceedings

On September 28, 2008, Kevin Guay and his wife filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Hampshire.  On June 23, 2009, the case was converted to a Chapter 7 proceeding.  The claims advanced here did not appear as an asset on the Guays' initial bankruptcy schedules, as the events giving rise to the claims had not yet occurred.

## B.  Civil Lawsuit

In early 2009, while still in bankruptcy, the Guays were subjects of a police investigation into alleged violations of state environmental protection laws.[1]  On March 25, 2009, defendant Sean Ford, a Concord, New Hampshire police detective, secured search warrants allowing extensive excavation of two properties owned by the Guays.  During execution of the warrants on March 25 and 26, officers also searched the Guays' home, which was not included in either warrant.  The officers also denied the Guays and their tenants access to other properties the couple owned for which no warrant was obtained.  The search caused extensive damage to the

---

[1] The investigation concerned the alleged illegal disposal of asbestos, lead paint, solid and hazardous waste, oil discharge, and septic waste on property owned by the Guays.  Aside from the search that gave rise to the Guays' claims, the details of the alleged violations and the resulting investigation are irrelevant to this appeal.

Guays' properties and was widely reported in television and print media.

On June 26, 2009, Kevin Guay, acting pro se, filed suit in federal court under 42 U.S.C. § 1983 against Ford and various other defendants claiming a violation of his Fourth, Fifth and Fourteenth Amendment rights.[2]  He also raised state law claims of malicious prosecution, malicious abuse of process, and intentional and negligent infliction of emotional distress.  A month later, Lorraine Guay, also pro se, filed a substantially similar suit and the district court ordered the two actions consolidated.

## C. The Guays' Failure to Disclose the Existence of Their Claims to the Bankruptcy Court

Throughout their bankruptcy proceeding, the Guays failed to file amended asset schedules identifying their lawsuits as assets, as required by 11 U.S.C. § 521(a)(1) and § 541(a)(1) & (7). During an August 12, 2009 meeting of the Guays' creditors, an attorney for the State of New Hampshire asked the Guays about various civil lawsuits in which they were plaintiffs, including those at issue here.  The lawsuits were discussed among the Guays, their counsel, counsel for the State, and the bankruptcy Trustee, and the Guays' counsel offered to provide the Trustee with copies of all the relevant filings.  It is unclear whether these documents

---

[2] The other defendants are Thomas Burack, Commissioner of the Department of Environmental Services for the State of New Hampshire; Kelly Ayotte, former New Hampshire Attorney General; the City of Concord; and the Concord Police Department.

were ever provided, but the Guays never formally disclosed the existence of the claims by amending their asset schedules.

Later in August 2009, the State of New Hampshire filed a motion seeking an order requiring the Guays to demonstrate why they should not be held in contempt for failing to file required monthly operating statements and amended bankruptcy schedules. The motion noted that these filings were required both by Federal Rule of Bankruptcy Procedure 1019 and by the bankruptcy court's order converting the bankruptcy matter from a Chapter 11 to a Chapter 7 proceeding. In response to this motion, the bankruptcy court ordered the Guays to file the additional information required by Bankruptcy Rules 1019 and 1007, including information concerning any property interest acquired subsequent to the filing of the bankruptcy petition. The order required the Guays to file this information by October 29, 2009.

Before that deadline arrived, the bankruptcy court granted the Guays a discharge on October 27 pursuant to 11 U.S.C. § 727. This order discharged all debts eligible for discharge in a Chapter 7 bankruptcy, but did not dismiss the case or end the Trustee's responsibility for the estate. Accordingly, in response to the court's earlier order, the Guays filed an affidavit with the bankruptcy court on October 29 stating that no amendments to their petition or asset schedules were necessary.

Several days later, the State of New Hampshire filed another motion in the bankruptcy proceeding seeking an order finding the Guays in contempt for failing to file monthly operating reports and the disclosures required by Bankruptcy Rule 1019. The Guays filed an opposition to this motion, stating that "the Debtors have filed an affidavit stating that the information provided in their bankruptcy schedules as amended was accurate and there are no changes," and again affirming the completeness and accuracy of their bankruptcy schedules and failing to identify their lawsuits as assets.

Shortly thereafter, in a December 2009 order, the magistrate judge handling this civil action ordered the parties to submit additional briefing on the issue of whether the bankruptcy Trustee, and not the Guays, was the real party in interest in this lawsuit. In doing so, the court noted that the Trustee had not abandoned the action. In their supplemental brief, the defendants raised the issue of judicial estoppel for the first time. Subsequently, on January 15, 2010, the Guays filed with the bankruptcy court a Report of Unpaid Chapter 11 Obligations in which they identified their claims in this lawsuit.[3] The Chapter 7

_____

[3] This filing is required by Federal Rule of Bankruptcy Procedure 1019 whenever a Chapter 11 case is converted to a Chapter 7 case. The bankruptcy court ordered the Guays to make the disclosures required by Rule 1019 by January 15, 2010. The Guays' filing, although it responded to the court's order, did not meet their obligation to amend their bankruptcy schedules to identify assets, and no explanation is provided as to why the Guays chose to

Trustee then filed a Notice of Abandonment with respect to the Guays' lawsuits, explaining that she had determined that "the Lawsuits are burdensome and of inconsequential value to the estate." This Notice was served on the Guays' creditors, who were given the opportunity to object to the Trustee's action if they believed the lawsuits had significant value. None objected.

## D. The District Court's Application of Judicial Estoppel

The appellees moved to dismiss the Guays' claims on multiple grounds, including judicial estoppel. They argued that, because the Guays failed to disclose their claims to the bankruptcy court, they were barred from bringing the same claims in this action. Deferring resolution of the judicial estoppel issue until the factual record was better developed, the district court adopted in March 2009 the report and recommendation of the magistrate judge and dismissed most of the Guays' claims for failure to allege facts supporting the claims. The only surviving claims were Kevin Guay's malicious abuse of process claim against Ford, the City of Concord, and the Concord Police Department, and the Fourth Amendment claims of both Guays against Ford in his personal capacity.

After several months of discovery, the remaining defendants moved for summary judgment, again raising the judicial estoppel defense. On November 16, 2010, after de novo review, the

identify the claims at issue in this case among a list of their obligations to creditors.

district court adopted the recommended decision of the magistrate judge and granted the motion on the basis of the Guays' failure to disclose their claims in their bankruptcy proceeding.

## II.

Typically, a district court's grant of summary judgment is reviewed de novo. Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 446 (1st Cir. 2009). However, when reviewing application of the doctrine of judicial estoppel "the applicable rubric is abuse of discretion." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30 (1st Cir. 2004). In Alternative System Concepts, we explained that the abuse of discretion standard is appropriate even when reviewing a judicial estoppel ruling on a motion for summary judgment. Id. at 31. We identified several reasons for applying the standard in this context, including: 1) the discretionary nature of judicial estoppel, 2) the district court's closer relationship to the facts of the case and the litigants' conduct, 3) the flexibility of the abuse of discretion standard, and 4) the fact that other circuits that have addressed the question have unanimously settled on abuse of discretion as the appropriate standard. Id. at 30-31. We concluded that "[t]he fact that this case arises in the summary judgment context does not affect our decision to review the trial court's determination for abuse of discretion." Id. at 31; see also Thore v. Howe, 466 F.3d 173, 185 (1st Cir. 2006) (reviewing application of judicial

estoppel upon a motion for summary judgment under the abuse of discretion standard).

Under the abuse of discretion standard, "we will not lightly substitute our judgment for that of the district court, [and will reverse] only 'if we are left with a definite and firm conviction that the court below committed a clear error of judgment.'" Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 236 (1st Cir. 2010) (quoting Tang v. State of R.I., Dep't of Elderly Affairs, 163 F.3d 7, 13 (1st Cir. 1998)) (internal quotation marks omitted). As the Supreme Court has noted, "deference . . . is the hallmark of abuse-of-discretion review." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997).

## III.

### A. The Doctrine of Judicial Estoppel

The equitable doctrine of judicial estoppel is ordinarily applied to "prevent[] a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." Alternative Sys. Concepts, 374 F.3d at 32-33 (quoting InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)). Where one succeeds in asserting a certain position in a legal proceeding, one may not assume a contrary position in a subsequent proceeding simply because one's interests have changed. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). We have explained that, "[t]he

doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the justice system." Alternative Sys. Concepts, 374 F.3d at 33. Although we have characterized the archetypal judicial estoppel case as one in which a litigant is "playing fast and loose with the courts," id. (internal quotation marks omitted), such tactics are not a prerequisite for application of the doctrine. "[A] party is not automatically excused from judicial estoppel if the earlier statement was made in good faith." Thore, 466 F.3d at 184 n.5.

There are two generally agreed-upon conditions for the application of judicial estoppel. "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive." Alternative Sys. Concepts, 374 F.3d at 33. "Second, the responsible party must have succeeded in persuading a court to accept its prior position." Id. There is also a third oft-considered factor that asks "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 751. We generally have not required a showing of unfair advantage. See Thore, 466 F.3d at 182 (noting that this circuit has "rejected [benefit] as a prerequisite to application of the doctrine"); Alternative Sys. Concepts, 374 F.3d at 33 (noting that unfair advantage is "not a formal element of a

claim of judicial estoppel").  Where unfair advantage exists, however, it is a powerful factor in favor of applying the doctrine. See Perry v. Blum, 629 F.3d 1, 8-9 (1st Cir. 2010); Alternative Sys. Concepts, 374 F.3d at 33.

Finally, it is well-established that a failure to identify a claim as an asset in a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel, barring the debtor from pursuing the claim in a later proceeding.  See Moses v. Howard Univ. Hosp., 606 F.3d 789, 798 (D.C. Cir. 2010) ("[E]very circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case."); Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993) ("[H]aving obtained judicial [bankruptcy] relief on the representation that no claims existed, [plaintiff] can not now resurrect them and obtain relief on the opposite basis.").

## B. The District Court's Application of Judicial Estoppel to the Guays' Claims

In adopting the magistrate judge's recommended decision that judicial estoppel barred the Guays' claims, the district court emphasized the Guays' failure to disclose their claims in the bankruptcy proceeding and the discharge obtained in that

proceeding. Kevin Guay,[4] however, raises three arguments on appeal: 1) he did not take contradictory positions in his bankruptcy and civil cases, 2) the bankruptcy court did not adopt the schedules in that proceeding, and 3) even if his position here is inconsistent with that taken in the bankruptcy proceeding, and even if the bankruptcy court adopted his position in that proceeding, it is not equitable to apply judicial estoppel in this case.

### 1. The Guays' Inconsistent Positions Before the Bankruptcy Court and the District Court

Under the rules governing the bankruptcy proceeding, appellant had an obligation to disclose all assets to the bankruptcy court, 11 U.S.C. §§ 521(a)(1) and 541(a)(1), including legal claims and potential claims, see Moses, 606 F.3d at 793 ("A debtor is required to disclose all potential claims in a bankruptcy petition."); Howe v. Richardson, 193 F.3d 60, 61 (1st Cir. 1999) ("Like all of [debtor's] property . . ., his legal claims became part of the bankruptcy 'estate' under the Bankruptcy Code."). This disclosure must take the form of a schedule identifying all assets, 11 U.S.C. § 521(a)(1), and the debtor must amend his asset schedules and petition if circumstances change during the bankruptcy proceeding, see 11 U.S.C. § 541(a)(7) (stating that

---

[4] Both Kevin Guay and his wife, Lorraine Guay, were plaintiffs in the action below. However, only Kevin Guay has appealed from the district court's judgment and thus he is the sole appellant in this case.

estate property includes "[a]ny interest in property that the estate acquires after the commencement of the case"); Moses, 606 F.3d at 793 ("[A] debtor is under a duty both to disclose the existence of pending lawsuits when he files a petition in bankruptcy and to amend his petition if circumstances change during the course of the bankruptcy.").

The Guays failed to meet this baseline obligation to amend their bankruptcy schedules, even when ordered by the court to do so. In September 2009, the bankruptcy court ordered the Guays to file certain information required by the Federal Rules of Bankruptcy Procedure, including amended asset schedules. In response, the Guays filed an affidavit stating:

> 1. We have reviewed our Bankruptcy Petition and Amendments as filed and find that there is no additional information to include on our Petition or Amendments.
>
> 2. We make the foregoing declaration under penalty of perjury.

The Guays again denied the existence of the claims they seek to bring here in their opposition to New Hampshire's motion for contempt. They stated that, "[i]n accordance with the Court's request, the Debtors have filed an affidavit stating that the information provided in their bankruptcy schedules as amended was accurate and there are no changes." Accordingly, in addition to neglect of their general duty to disclose newly acquired assets,

-13-

the Guays twice represented to the bankruptcy court that no such assets existed.

These averments, and their general failure to update their bankruptcy schedules, are plainly inconsistent with the Guays' conduct in bringing their claims now. As the Eleventh Circuit has explained, "[b]y failing to update her bankruptcy schedule to reflect her [newly filed] claim, [debtor] represented that she had no legal claims to the bankruptcy court while simultaneously pursuing her legal claim . . . in the district court. These actions, both taken under oath, are clearly inconsistent." Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010).

### 2. The Bankruptcy Court's Acceptance of the Position Advanced in the Guays' Asset Schedule

A bankruptcy court "accepts" a position taken in the form of omissions from bankruptcy schedules when it grants the debtor relief, such as discharge, on the basis of those filings. Compare Cannon-Stokes v. Potter, 453 F.3d 446, 447 (7th Cir. 2006) ("[Debtor] had represented that she had no claim against [defendant] . . .; that representation had prevailed; she had obtained a valuable benefit in the discharge of her debt."), and Payless Wholesale Distribs., 989 F.2d at 571 ("[Debtor] having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis."), with DiVittorio v. HSBC Bank, USA, N.A. (In re

-14-

<u>DiVittorio)</u>, 430 B.R. 26, 48 (Bankr. D. Mass. 2010) (stating that a position advanced in bankruptcy schedules had not been accepted when the bankruptcy court "ha[s] not granted the Debtor any relief, such as a discharge, based upon representations made in them.").

Here, the Guays were discharged from bankruptcy on October 27, 2009. Although discharge preceded the Guays' representations to the court that no changes to the schedules were necessary, it occurred months after the Guays became aware of their claims and the obligation to amend the schedules had arisen. Accordingly, the bankruptcy court accepted the position the Guays adopted with respect to their assets when it discharged them from bankruptcy on October 27, 2009.

### 3. Unfair Advantage and Equitable Considerations

Having determined that the two requisite elements for application of judicial estoppel (inconsistent positions in two judicial proceedings, and success in relying on the position in the first proceeding) are present, we now turn to the equities of the district court's decision to apply judicial estoppel. Appellant notes that he stands to gain no unfair advantage in this proceeding on account of his failure to disclose the claims to the bankruptcy court. Furthermore, he argues that, because the Trustee was made aware of the claims at the August 2009 creditors' meeting, prior to his obtaining a discharge on October 27, 2009, and because he listed the claims on his Report of Unpaid Chapter 11 obligations in

-15-

January 2010, he did not intend to conceal his claims from the bankruptcy court. Hence applying judicial estoppel in this case would be inequitable.

As noted above, unfair advantage "is not a formal element of a claim of judicial estoppel," Alternative Sys. Concepts, 374 F.3d at 33, but it is frequently considered as an important factor in whether to apply the doctrine, see New Hampshire, 532 U.S. at 751. In this case, appellees admit that appellant stands to gain no unfair advantage in this proceeding because of his representations to the bankruptcy court. However, the doctrine is also intended to protect the integrity of other judicial proceedings.

We addressed the application of judicial estoppel on the basis of bankruptcy schedules in Payless Wholesale Distributors. In that case, as here, the plaintiff sought to bring claims that it previously failed to disclose in its bankruptcy schedules. We observed that "[a] long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." 989 F.2d at 571 (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988)). The accuracy and completeness of bankruptcy schedules is important "[i]n order to preserve the requisite reliability of disclosure statements and to provide assurances to creditors regarding the

-16-

finality of plans which they have voted to approve."  Id. at 571-72 (quoting Oneida Motor Freight, 848 F.2d at 418); see also Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) ("Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system." (internal quotation marks omitted)).

We determined in Payless that the integrity of the bankruptcy process is sufficiently important that we should not hesitate to apply judicial estoppel even where it creates a windfall for an undeserving defendant.[5]  We concluded that "[t]his may not be strictly equitable estoppel . . . . [i]ndeed, defendants may have a windfall.  However, [the plaintiff's conduct] is an unacceptable abuse of judicial proceedings."  989 F.2d at 571; see also Cannon-Stokes, 453 F.3d at 448 ("A doctrine that induces debtors to be truthful in their bankruptcy filings will assist creditors in the long run (though it will do them no good in the particular case) -- and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers.").

---

[5] Such a windfall would exist if a meritorious claim is deemed to be forfeit by failure to identify it as an asset in a bankruptcy proceeding.  In such a case, a defendant that would otherwise be liable is spared because of the plaintiff's conduct in an unrelated proceeding.  We express no opinion on the merit of the Guays' underlying claims in this case, and thus do not suggest that such a windfall exists here.  We merely point out that the integrity of the judicial process is paramount.

Guay argues that the fact that the claims were discussed during the August 2009 meeting with the bankruptcy Trustee and creditors is proof that he did not attempt to conceal the claims. However, even if we were to accept that he attempted to disclose the existence of the claims at this meeting (and, for reasons discussed below, we do not), oral disclosure does not meet the requirements of the bankruptcy code. In <u>Jeffrey</u> v. <u>Desmond</u>, 70 F.3d 183 (1st Cir. 1995), we explained the importance of formally scheduling claims and the insufficiency of oral notification.[6] We noted that "[t]he law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules," <u>id.</u> at 186, and explained that the fact that the debtors brought their claims to the Trustee's attention by means of oral notification still left open the possibility of judicial estoppel, <u>id.</u> at 186-87. While we were not called upon to decide whether judicial

---

[6] The procedural posture in <u>Jeffrey</u> differed from that here. There, the appellants were former debtors who attempted to litigate claims that they failed to schedule in a contemporaneous bankruptcy proceeding. When the Trustee of their estate learned of the claims, he re-opened the bankruptcy case and settled the claims with the defendant in that case. The bankruptcy court approved the compromise and the district court affirmed. The debtor appealed, raising two primary arguments: first, that the Trustee constructively abandoned the claims because he failed to follow up after the debtor orally notified him of their existence, and, second, that when considering whether the compromise was fair in light of the competing interests at stake the district court inappropriately considered the likelihood that the claims would be dismissed pursuant to our holding in <u>Payless</u>. We affirmed the district court's decision to approve the compromise. <u>Id.</u> at 186-87.

estoppel was appropriate in that case, we observed that "appellants' argument that they brought the state court action to the Trustee's attention completely overlooks both the importance of the Bankruptcy Code's disclosure requirements and the fact that appellants signed the schedules under penalties of perjury." Id. at 187.

Some circuits have held that parties who fail to identify a legal claim in bankruptcy schedules may escape the application of judicial estoppel if they can show that they "either lack[ed] knowledge of the undisclosed claims or ha[d] no motive for their concealment." Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157 (10th Cir. 2007); see also Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010) (same); Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894, 898 (6th Cir. 2004) (same); Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 210 (5th Cir. 1999) (same). This case does not present facts that require consideration of that exception, and we leave that question open.[7]

The appellant makes much of the fact that his claims were discussed at the August 2009 creditors' meeting. However,

---

[7] We have never recognized such an exception and have noted that deliberate dishonesty is not a prerequisite to application of judicial estoppel. See Schomaker v. United States, 334 F. App'x 336, 340 (1st Cir. 2009) (finding that judicial estoppel was appropriate "whether [plaintiff] has taken an intentionally inconsistent position . . . or failed to disclose [asset] in the bankruptcy proceeding because he mistakenly believed it was subject to forfeiture").

appellant's briefing scrupulously avoids stating that it was an attorney for the State of New Hampshire who brought the claims to the Trustee's attention. Hence, appellant's argument that he cannot be deemed to have intended to conceal his claims where the Trustee had knowledge of the claims appears disingenuous, and his repeated denial of the existence of the claims takes on added significance. In sum, because the oral notice provided to the Trustee came from another party, and not from the Guays, and the Guays repeatedly averred to the bankruptcy court that no such claims existed, the district court had an ample basis for concluding that there was a motive to conceal in the bankruptcy proceeding.[8]

Finally, the fact that the claims were listed on the Guays' January 15, 2010 Report of Unpaid Chapter 11 Obligations does not prevent the application of judicial estoppel. This filing came more than two months after the bankruptcy court, in discharging the Guays from bankruptcy, had accepted the Guays' bankruptcy schedules as complete and accurate. Furthermore, it also came after the defendants raised the issue of judicial

---

[8] There was no explicit finding by the district court that there was a motive to conceal in this case. Instead, that finding may be fairly inferred from the court's reasoning. The court quoted our decision in Payless describing the debtor's conduct in that case as a plan to "[c]onceal [its] claims; get rid of [its] creditors on the cheap, and start over with a bundle of rights." 989 F.2d at 571. It then analogized the Guays' conduct to that of the debtors in Payless and concluded that such conduct was "an unacceptable abuse of judicial process."

estoppel. Therefore, the Guays only made this disclosure (which did not satisfy their obligation to amend their bankruptcy schedules) after: 1) repeatedly denying the existence of the claims, 2) obtaining a discharge from the bankruptcy court, and 3) their adversary raised the issue of judicial estoppel. To allow the Guays to rely on their belated report of unpaid obligations under these circumstances would neither serve the equities of this case nor create the proper incentive for future debtors to disclose assets in a bankruptcy proceeding completely and accurately. As the D.C. Circuit has explained,

> allowing . . . a debtor to "back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive" for the debtor "to provide the bankruptcy court with a truthful disclosure of his assets."

Moses, 606 F.3d at 800 (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002)). Furthermore, allowing such conduct "would similarly diminish the doctrine's ability to deter the debtor from pursuing claims in the District Court to which he is not entitled." Id.

## IV.

For the foregoing reasons, the district court did not abuse its discretion in applying the doctrine of judicial estoppel

to foreclose appellant's claims.  The judgment of the district court is <u>affirmed</u>.

<u>So ordered.</u>