Hernandez-Hernandez v. Barr

BIA
Connelly, IJ
A 208 277 797

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of October, two thousand nineteen.

PRESENT:
        GUIDO CALABRESI,
        JOSÉ A. CABRANES,
        JOSEPH F. BIANCO,
             *Circuit Judges.*
_____

EDWIN ANTONIO HERNANDEZ-
HERNANDEZ,
             *Petitioner,*

        v.                                          18-1930
                                                    NAC

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
             *Respondent.*
_____

FOR PETITIONER:          Devin S. Sikes, Ramin Mohammad,
                         Akin Gump Strauss Hauer & Feld
                         LLP, Washington, DC; Melissa
                         Gibson, Akin Gump Strauss Hauer &
                         Feld LLP, Philadelphia, PA; Robert
                         H. Pees, Nicole A. Greenstein,
                         Akin Gump Strauss Hauer & Feld
                         LLP, New York, NY.

FOR RESPONDENT:          Joseph H. Hunt, Assistant
                         Attorney General; Matthew B.
                         George, Senior Litigation Counsel;

Erik R. Quick, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Edwin Antonio Hernandez-Hernandez, a native and citizen of El Salvador, seeks review of a June 18, 2018, decision of the BIA affirming a December 21, 2017, decision of an Immigration Judge ("IJ") denying Hernandez-Hernandez's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Edwin Antonio Hernandez-Hernandez*, No. A 208 277 797 (B.I.A. June 18, 2018), *aff'g* No. A 208 277 797 (Immig. Ct. Batavia Dec. 21, 2017). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). We review the agency's legal conclusions de novo and its factual findings under the substantial evidence standard.

*Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013).  "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"  8 U.S.C. § 1252(b)(4)(B).

We remand for the agency to explain why there is no duress exception for the serious nonpolitical crime bar and why MS-13 is not a state actor based on the record evidence. We also remand because the agency applied a government acquiescence standard at odds with our decision in *De La Rosa v. Holder*, 598 F.3d 103, 110 (2d Cir. 2010), and failed to consider in its CAT analysis the undisputed and relevant fact that the Salvadoran government will know of Hernandez-Hernandez's former gang affiliation because the U.S. government relays that information about deportees.

**Serious Nonpolitical Crime Bar**

An applicant is ineligible for asylum and withholding of removal if "there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States[.]"  8 U.S.C. § 1158(b)(2)(A)(iii) (asylum); *see also* 8 U.S.C. § 1231(b)(3)(B)(iii) (withholding); 8 C.F.R. § 1208.16(d)(2) (withholding under the CAT).

Hernandez-Hernandez does not dispute that the murders he committed are serious nonpolitical crimes; instead, he argues that he qualifies for a duress exception. The agency appeared to accept that Hernandez-Hernandez had committed the crimes under duress, but concluded that there was no duress defense to the statutory bar. The BIA did not provide any reasoning for this conclusion except for a footnote that discusses duress defenses to crimes and murder generally and whether juveniles may be prosecuted for murder in the United States and El Salvador.

This lack of analysis by the BIA as to whether there is a duress defense warrants remand, especially considering that ten days after deciding Hernandez-Hernandez's case, the BIA determined in a published decision that there was a limited duress defense for the statutory persecutor bar under other subsections of the same statutory provisions, 8 U.S.C. §§ 1158(b)(2)(A)(i), 1231(b)(3)(B)(i). *Matter of Negusie*, 27 I. & N. Dec. 347 (B.I.A. 2018).

We recognize that the Attorney General ("AG") referred *Negusie* to himself in October 2018 for further review. *Matter of Negusie*, 27 I. & N. Dec. 481 (A.G. 2018). Given these circumstances, we conclude that remand to the BIA in

4

the first instance is warranted for further examination of whether a duress exception applies to the serious nonpolitical crime bar, in light of *Negusie* or the AG's eventual determination as to *Negusie*'s validity. *See Negusie v. Holder*, 555 U.S. 511, 523-24 (2009) (remanding to BIA to determine in first instance whether persecutor bar contains duress exception); *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (holding that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation" (internal quotation marks omitted)); *Ay v. Holder*, 743 F.3d 317, 320 (2d Cir. 2014) (remanding to allow BIA to address in the first instance possible duress exception to bar to asylum and withholding based on material support to terrorist organization); *see also Nderere v. Holder*, 467 F. App'x 56, 58-59 (2d Cir. 2012) (remanding to BIA to determine whether "particularly serious crime" bar contains duress exception).

**CAT Deferral**

CAT deferral is available regardless of the serious nonpolitical crime bar and does not require a nexus to a protected ground. *See* 8 C.F.R. § 1208.17(a). "[T]he CAT expressly prohibits the United States from returning any

person to a country in which it is more likely than not that he or she would be in danger of being subjected to torture." *Khouzam v. Ashcroft*, 361 F.3d 161, 168 (2d Cir. 2004) (internal quotation marks omitted); *see also* 8 C.F.R. § 1208.16(c)(2) ("The burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.").

"Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Acquiescence, in turn, "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7). "Where a government contains officials that would be complicit in torture, and that government, on the whole, is admittedly incapable of actually preventing that torture, the fact that some officials take action to prevent the torture would seem

neither inconsistent with a finding of government acquiescence nor necessarily responsive to the question of whether torture would be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *De La Rosa*, 598 F.3d at 110 (internal quotation marks omitted). The agency must consider "all evidence relevant to the possibility of future torture," including: "[e]vidence of past torture[,]" evidence regarding the possibility of internal relocation, "[e]vidence of gross, flagrant or mass violations of human rights[,]" and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3)(i)-(iv).

We review the agency's determination regarding the likelihood of torture for substantial evidence but consider legal issues de novo. *See Hui Lin Huang v. Holder*, 677 F.3d 130, 134 (2d Cir. 2012) ("A determination of what will occur in the future and the degree of likelihood of the occurrence has been regularly regarded as fact-finding . . . ."); *see also Joaquin-Porras v. Gonzales*, 435 F.3d 172, 181 (2d Cir. 2006) (reviewing findings of fact regarding CAT claim for substantial evidence, but "review[ing] de novo questions of

law regarding what evidence will suffice to carry any . . . applicant's burden of proof" (internal quotation marks omitted)).

The agency appeared to concede that MS-13 would likely harm Hernandez-Hernandez, but stated that this harm did not qualify him for CAT relief because MS-13 is not a state actor and the government of El Salvador had been actively combating gang violence and would therefore not acquiesce to Hernandez-Hernandez's torture. The agency also concluded that it was not likely that the government would single out Hernandez-Hernandez for torture because he (1) was not a full gang member, (2) did not have any tattoos, (3) was not aware of any public official looking for him, (4) was not aware of any legal prosecution he would face for the murders he committed, and (5) was not harmed when Mexican authorities returned him to El Salvador on his first attempt to reach the United States in 2015.

We conclude that the agency (1) did not adequately explain why MS-13 is not a de facto state actor given the record evidence, (2) applied the incorrect legal standard for acquiescence, and (3) overlooked the relevant fact that upon Hernandez-Hernandez's removal, the U.S. government will

8

inform the Salvadoran government of his former gang affiliation.

First, the agency did not adequately explain its determination that MS-13 is not a de facto state actor. As Hernandez-Hernandez argues, we have recognized that a private actor or group may be a de facto state actor to satisfy the government acquiescence requirement under the CAT. *See Delgado v. Mukasey*, 508 F.3d 702, 709 (2d Cir. 2007) (remanding to address CAT claim alleging government acquiescence to torture by rebel group); *see also Gomez-Beleno v. Mukasey*, 291 F. App'x 411, 414 (2d Cir. 2008); *Buritica-Colorado v. Gonzales*, 217 F. App'x 38, 41 (2d Cir. 2007). While we do not require "that an IJ expressly parse or refute" each piece of evidence, *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 336 n.17 (2d Cir. 2006), that is only when the agency "has given reasoned consideration to the petition, and made adequate findings," *Wei Guang Wang v. B.I.A.*, 437 F.3d 270, 275 (2d Cir. 2006) (internal quotation marks omitted).

Here, it is unclear if the agency gave such reasoned consideration and analyzed the evidence as to MS-13's status as a de facto state actor. The BIA agreed with the IJ's

9

conclusion that MS-13 was not a state actor, but did not elaborate. The IJ said MS-13 was not a state actor twice, but did not explain why. Therefore, remand is warranted for the agency to explain why MS-13 is not a de facto state actor. *See Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) ("Despite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful.").

Second, the IJ applied the wrong legal standard for government acquiescence. The IJ cited the country-conditions evidence, including Dr. Thomas Boerman's expert affidavit, and found that although there is much gang violence and the government has struggled to curb it, "the documentation does not show that the government of El Salvador has turned a willful blind eye or acquiesced to this problem[.]" The IJ conceded that Salvadoran efforts "regrettably have failed to control the gang violence" and that currently, the government "is losing the battle" against the gangs. But then the IJ concluded that despite this losing battle, "the escalating nature of police response in a state of war against the gangs" was evidence that the Salvadoran government was not

acquiescing to gang violence.

This analysis does not account for our holding in *De La Rosa* that "the preventative efforts of some government actors [does not] foreclose the possibility of government acquiescence, as a matter of law, under the CAT . . . [w]here a government contains officials that would be complicit in torture, and that government, on the whole, is admittedly incapable of actually preventing that torture."  598 F.3d at 110.  Therefore, we remand to the agency for additional analysis of acquiescence as defined in *De La Rosa*.

Finally, the agency overlooked the fact that the Salvadoran government will be aware of Hernandez-Hernandez's former gang affiliation because the U.S. government will communicate this information to them.  *See Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (stating that the agency commits legal error when it "totally overlook[s]" important facts).  The agency emphasized that Hernandez-Hernandez would not be singled out by the government because he was not a full gang member, the Salvadoran government does not know he was a gang member, and the government did not harm him when Mexican officials returned him in 2015 after his initial attempt to flee El Salvador.  But Dr. Boerman notes in his

uncontested affidavit that the U.S. government provides Salvadoran officials with information on deportees' gang affiliation. According to Dr. Boerman, Salvadoran officials then use this information to target individuals for further scrutiny, "threats—including death threats—arbitrary detention, beatings and/or torture."

Although the Salvadoran government did not harm Hernandez-Hernandez when he was returned by Mexico after his first attempt to reach the United States in 2015, there is no evidence that Mexican authorities knew of Hernandez-Hernandez's former MS-13 affiliation. In contrast, the United States government is clearly aware of that past affiliation and, according to Dr. Boerman's undisputed affidavit and testimony, it relays information on gang affiliation to the country of removal.

Thus, we remand for the agency to consider the fact that the Salvadoran government will know of Hernandez-Hernandez's prior gang affiliation in light of the entire record. *See* 8 C.F.R. § 1208.16(c)(3) ("In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, *all evidence* relevant to the possibility of future torture shall be considered[.]"

12

(emphasis added)).

For the foregoing reasons, the petition for review is GRANTED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

<div style="margin-left:50%">

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

</div>

13