NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

23-P-848                                          Appeals Court

JUDITH MAHABIR  vs.  JAMES CROCKER & others.[1]


No. 23-P-848.

Barnstable.     February 5, 2024. – May 29, 2024.

Present:  Wolohojian, Englander, & Brennan, JJ.[2]


Bankruptcy.  Practice, Civil, Judgment on the pleadings, Motion
     to amend.  Judicial Estoppel.



     Civil action commenced in the Superior Court Department on
October 17, 2019.

     The case was heard by Thomas J. Perrino, J., on a motion
for summary judgment, and a motion for judgment on the pleadings
or, in the alternative, for reconsideration was considered by
him.


     Richard K. Latimer for the plaintiff.
     Keerthi Sugumaran for the defendants.


---

     [1] Luke Jackson, Richard Deegan, James DeRosa, Joel Quinn,
and town of Barnstable.

     [2] Justice Wolohojian participated in the deliberation on
this case and authored this opinion while an Associate Justice
of this court, prior to her appointment as an Associate Justice
of the Supreme Judicial Court.

WOLOHOJIAN, J.  On November 6, 2017, the plaintiff was terminated by the town of Barnstable (town) from her employment as a janitor.  Not long thereafter, on December 29, 2017, she and her husband filed a joint petition in the United States Bankruptcy Court for the District of Massachusetts (bankruptcy court) pursuant to Chapter 13 of the United States Bankruptcy Code, seeking relief in the form of a payment plan for their home mortgage to forestall foreclosure.  Neither the plaintiff nor her husband, who were both represented by counsel in the bankruptcy court (bankruptcy counsel), identified or disclosed that she had any claims or potential claims arising from her employment or termination among their assets.

On October 17, 2019, the plaintiff, represented by her present counsel (plaintiff's counsel), filed this suit (Superior Court case) against the defendants alleging, among other things, sexual harassment, a sexually hostile work environment, and retaliatory discharge.[3]  The Superior Court case proceeded for approximately three years until December 2022, when the defendants' counsel discovered that the plaintiff had never

---

[3] The complaint asserted:  (1) sexual harassment against Crocker, Jackson, Deegan, DeRosa, and Quinn, in violation of G. L. c. 214, § 1C; (2) civil conspiracy, against the same defendants; (3) tortious interference with economic relations against Quinn; (4) a sexually hostile work environment against the town, in violation of G. L. c. 151B, § 4 (16A); and (5) retaliatory discharge against the town, in violation of G. L. c. 151B, § 4 (4).

disclosed to the bankruptcy court this suit or the claims asserted in it. The defendants' counsel notified the plaintiff's counsel of the omission at the end of December 2022. Subsequently, on February 2, 2023, the defendants served on the plaintiff's counsel a motion for judgment on the pleadings, arguing that the failure to disclose the claims in the bankruptcy court judicially estopped the plaintiff from pursuing them in the Superior Court case.

On February 15, 2023 -- after the motion for judgment on the pleadings had been served, but before it was filed -- the plaintiff and her husband filed in the bankruptcy case a motion for leave to amend their bankruptcy filings in order to disclose the pendency of the Superior Court case, the nature of the claims, the court in which the claims were pending, and the docket number. That motion was allowed the same day by the bankruptcy court judge. Also on that day, the plaintiff and her husband filed an application to have the plaintiff's counsel be appointed to pursue on behalf of the bankruptcy estate the claims asserted in the Superior Court case. In addition, the plaintiff served on the defendants' counsel her opposition to the motion for judgment on the pleadings, which was supported by an affidavit from the plaintiff's counsel in which he averred:

- he had not been aware of the bankruptcy action prior to being notified of it by the defendants' counsel at the end of December 2022;

- similarly, bankruptcy counsel had not been aware of the Superior Court case until notified by the plaintiff's counsel;

- the motion to amend the schedule of assets had been allowed by a judge of the bankruptcy court; and

- the motion to employ the plaintiff's counsel to pursue the Superior Court case on behalf of the bankruptcy estate was pending in the bankruptcy court.

Despite these developments, on February 27, 2023, the defendants pressed ahead and filed with the Superior Court their motion for judgment on the pleadings, together with supporting materials and the plaintiff's opposition, including the affidavit we have just summarized.[4]

On March 8, 2023, the bankruptcy court judge allowed the plaintiff's application to appoint the plaintiff's counsel to pursue the Superior Court claims on behalf of the bankruptcy estate, finding that no objections to the application had been filed and that good cause had been shown. This development does

---

[4] At the same time as their motion for judgment on the pleadings, the defendants filed, in the alternative, a motion for reconsideration in part of the denial of a motion for summary judgment they had filed earlier in the litigation. Because the judge allowed the motion for judgment on the pleadings, he denied the motion for partial reconsideration as moot. The defendants and the plaintiff both ask that, should we reverse the ruling on the motion for judgment on the pleadings, as we do, we reach the merits of the motion for partial reconsideration. It is not for us, however, to rule on the merits of the motion in the first instance. On remand, the judge may consider the motion on the merits.

not appear to have been relayed by either side to the Superior Court.[5]

On May 10, 2023, without hearing,[6] a Superior Court judge allowed the motion for judgment on the pleadings on the ground that the plaintiff was judicially estopped from pursuing her claims because they had not been timely disclosed in the bankruptcy case. The Superior Court judge believed that the plaintiff had benefited by the delayed disclosure because the bankruptcy court had confirmed the plaintiff's and her husband's payment plans during the period of nondisclosure. The judge did not take into account that the bankruptcy court judge later accepted the amended schedule disclosing the claims. Nor did the judge take into account that the bankruptcy court judge had appointed the plaintiff's counsel to pursue the claims for the benefit of the bankruptcy estate.[7] Instead, the judge relied

---

[5] As the proponents of the motion, the defendants had an obligation to bring this relevant information to the judge's attention. At the same time, the plaintiff's counsel had an obligation to bring forward the same information because it was helpful to his client. We do not attempt to weigh which side fell further short of its obligations. It is enough to say that neither side served the case well by failing to bring all pertinent information to the attention of the Superior Court judge.

[6] The judge's memorandum of decision and order states that no hearing was conducted because neither party requested one and the judge did not think one was necessary.

[7] A motion for judgment on the pleadings is ordinarily confined to the well-pleaded factual averments contained in the

solely on the fact that the information had not been timely disclosed. The judge's ruling on the motion for judgment on the pleadings is now before us.

"[T]wo fundamental elements are widely recognized as comprising the core of a claim of judicial estoppel. First, the position being asserted in the litigation must be directly inconsistent, meaning mutually exclusive of, the position asserted in a prior proceeding. . . . Second, the party must have succeeded in convincing the court to accept its prior position." Holland v. Kantrovitz & Kantrovitz LLP, 92 Mass. App. Ct. 66, 74 (2017), quoting Otis v. Arabella Mut. Ins. Co., 443 Mass. 634, 640-641 (2005). "Notwithstanding that general articulation of the doctrine, there may arise certain instances where the party's prior position was asserted in good faith, and where the circumstances provide a legitimate reason -- other than sheer tactical gain -- for the subsequent change in that

---

pleadings, see Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), and we take those facts in the light most favorable to the plaintiff. See Jarosz v. Palmer, 436 Mass. 526, 529-530 (2002); Bonafini v. G6 Hospitality Prop., LLC, 101 Mass. App. Ct. 612, 613 n.4 (2022). In ruling on a motion for judgment on the pleadings, a judge may also take judicial notice of court records in a related case. See Jarosz, supra at 530. Here, the judge looked outside the pleadings and took judicial notice of some of the bankruptcy court filings. However, once the judge chose to do so, he should have taken steps (such as inquiring of the parties at a hearing, or checking the bankruptcy court docket) to ensure that the matters of which the judge wished to take judicial notice were accurate and up to date.

party's position." Otis, supra at 642.  The purpose of the doctrine is "to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system" (citation omitted).  Id.  "[T]he doctrine is not susceptible of an exhaustive formula for determining [its] applicability, and the Supreme Judicial Court has decline[d] to construct a categorical list of requirements or to delineate each and every possible exception" (quotations and citations omitted).  Spinosa v. Tufts, 98 Mass. App. Ct. 1, 6 (2020).

In order to understand the application of the doctrine in this case, we begin by briefly summarizing the relevant aspects of a Chapter 13 bankruptcy proceeding.

An "individual with regular income," 11 U.S.C. § 109(e), with exceptions not relevant here, i.e., one "whose income is sufficiently stable and regular to enable such individual to make payments under a plan," 11 U.S.C. § 101(30), may seek protection under Chapter 13 of the Bankruptcy Code.  A debtor seeking protection under Chapter 13 must submit, among other things, a schedule of assets and liabilities.  See 11 U.S.C. § 521(a)(1)(B)(i); Fed. R. Bankr. P. 1007(b)(1)(A).  The debtor must also file a plan showing how creditors will be repaid over time from future income.  See 11 U.S.C. §§ 1321, 1322.  If a judge of the bankruptcy court is persuaded that the plan

satisfies the requirements of the Bankruptcy Code and meets other conditions, the judge then will confirm the plan.  See 11 U.S.C. § 1325.  "The provisions of a confirmed plan bind the debtor and each creditor," 11 U.S.C. § 1327(a), which means, among other things, that the debtor must make payments to the bankruptcy trustee in the amounts and frequency required by the plan.  "At any time after confirmation of the plan but before the completion of payments," the plan may be modified to increase or reduce the payments, or to extend or shorten the repayment period.  11 U.S.C. § 1329(a).  After the debtor has completed all required payments, and the debtor has certified that all amounts due have been paid, the "[bankruptcy] court shall grant the debtor a discharge of all debts provided for by the plan."  11 U.S.C. § 1328(a).

As noted above, the plaintiff and her husband filed a petition for relief under Chapter 13.  In addition to filing the petition and a proposed payment plan, they also filed a schedule of assets and liabilities in which they responded "no" when asked to identify

> **"[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
>
> Examples:  Accidents, employment disputes, insurance claims, or rights to sue."

Official Bankruptcy Form 106A/B, Schedule A/B:  Property.  The bankruptcy court confirmed a payment plan on October 12, 2018,

and later, after several proposed amended plans were filed, confirmed another plan on January 20, 2021.  The Superior Court claims were not disclosed to the bankruptcy court as of either of the confirmation dates.

Both sides in this case agree that the plaintiff and her husband should have disclosed the claims once the Superior Court case was filed in October 2019.  See Holland, 92 Mass. App. Ct. at 70-71.  See also Guay v. Burack, 677 F.3d 10, 19 (1st Cir. 2012).  That said, the plaintiff and her husband disclosed the Superior Court claims while (1) the bankruptcy proceeding remained open, (2) the plaintiff and her husband continued to make the required payments under the plans, and (3) no discharge had yet entered.  Moreover, the bankruptcy court accepted the plaintiff's and her husband's amended schedule disclosing (albeit belatedly) the Superior Court claims, and allowed their request to have the plaintiff's counsel pursue the claims for the benefit of the bankruptcy estate.

The question here is not solely whether the Superior Court claims should have been disclosed in the bankruptcy (they should have been), or whether they were timely disclosed (they were not).  Rather, the question is whether the judge abused his discretion in concluding that the plaintiff should be judicially estopped from pursuing her Superior Court claims in order to safeguard the integrity of the bankruptcy proceeding.  See Otis,

443 Mass. at 642. Given that the bankruptcy proceeding remained open, the plaintiff and her husband continued to make payments under the approved plans, the debts had not been discharged, the bankruptcy court judge had allowed the plaintiff's and her husband's belated amended disclosure of assets, and the bankruptcy court judge had appointed the plaintiff's counsel to pursue the Superior Court claims for the benefit of the bankruptcy estate, we conclude that he did. See Spinosa, 98 Mass. App. Ct. at 6 (judicial estoppel not applied where unnecessary to safeguard integrity of courts). It fell outside the range of reasonable alternatives for the judge not to consider the bankruptcy court judge's own treatment of the belated disclosure when determining whether the integrity of the bankruptcy proceeding had been compromised by the belated disclosure. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

In reaching that conclusion, we are persuaded by the United States Court of Appeals for the Eleventh Circuit's en banc opinion in Slater v. United States Steel Corp., 871 F.3d 1174 (11th Cir. 2017). Like that court,

> "We see no good reason why, when determining whether a debtor intended to manipulate the judicial system, a [trial] court should not consider the bankruptcy court's treatment of the nondisclosure. We reject the idea that encouraging a [trial] court to blind itself to subsequent proceedings in the bankruptcy court, particularly the bankruptcy court's decision about whether to allow the

> debtor to amend [her] disclosures or reopen [her]
> bankruptcy case, better protects the bankruptcy system."

Id. at 1187.  Once a debtor has amended the debtor's bankruptcy

court filings to reflect the existence of the claim,

> "the application of judicial estoppel poses a potential
> risk of harm to innocent creditors.  When a civil claim is
> dismissed on the basis of judicial estoppel, the asset
> becomes worthless -- losing any potential to increase the
> value of the bankruptcy estate -- which in turn harms
> creditors.  It is easy to see why in Chapter 7 proceedings:
> the trustee is responsible for liquidating the assets in
> the estate and then distributing the proceeds to creditors.
> When the civil claim is dismissed, there can be no proceeds
> from a recovery or settlement for distribution to
> creditors.

> "Although not as apparent for Chapter 13 proceedings, a
> risk remains that the dismissal will harm creditors.  The
> amount of proceeds that creditors receive in a Chapter 13
> bankruptcy is dictated by the confirmed plan, and a
> debtor's payments under the plan are generally based upon
> the debtor's expected future earnings.  But a plan can be
> confirmed only if the payments to the creditors are either
> equal to or exceed what the creditors would have received
> in a Chapter 7 bankruptcy, meaning that the value of a
> civil claim is taken into account in formulating and
> reviewing the plan.  If the debtor, trustee, creditors, and
> bankruptcy court know that a civil claim is likely to be
> dismissed based on judicial estoppel, they are likely to
> treat the claim as worthless, depriving the bankruptcy
> estate of what (absent judicial estoppel) might have been a
> valuable asset.  Because the application of judicial
> estoppel may harm innocent creditors, equitable principles
> dictate that courts proceed with care and consider all the
> relevant circumstances."  (Citations and footnote omitted.)

Id. at 1188.  See In re Parker, U.S. Ct. App., No. 18-30378 (5th

Cir. Jan. 8, 2020) (no judicial estoppel where bankruptcy court

allowed previously undisclosed claim to be pursued by debtor for

benefit of creditors).

The Superior Court judge found persuasive an unpublished decision from the Seventh Circuit, Williams vs. Hainje, U.S. Ct. App., No. 09-3772 (7th Cir. May 14, 2010).  However, that case involved materially different circumstances, most notably that the bankruptcy proceeding was dismissed without an amended schedule of assets ever having been filed or accepted by the bankruptcy judge, let alone with the judge having allowed the debtor to pursue the claim on behalf of the bankruptcy estate. The cases to which the defendants point are similarly factually dissimilar.[8]  See In re Residential Capital, LLC, 519 B.R. 606, 610-612 (S.D.N.Y. 2014) (bankruptcy dismissed without filing or acceptance of correct disclosure or allowance of pursuit of claim).  See also Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 599-600 (5th Cir. 2005) (same); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 784-785 (9th Cir. 2001) (same); Kunica v. St. Jean Fin., Inc., 233 B.R. 46, 57-59 (S.D.N.Y. 1999) (same).

Finally, we note that the defendants have not identified any harm flowing from the delayed disclosure of the Superior Court claims -- either to themselves, the creditors in the bankruptcy, to the bankruptcy trustee, to the bankruptcy court,

---

[8] The defendants' reliance on Casanova vs. PRE Solutions, Inc., U.S. Ct. App., No. 06-12417  (11th Cir. Mar. 28, 2007), is particularly infirm because that case was decided under a legal standard that was overruled by Slater, 871 F.3d at 1189.

or to the Superior Court.  Moreover, as we have already stated, the bankruptcy court judge has appointed the plaintiff's counsel to pursue the Superior Court claims for the benefit of the bankruptcy estate.  In these circumstances, although we do not endorse the belated disclosure of the claims in the bankruptcy action, especially considering that the plaintiff was represented by counsel in both actions, the judge abused his discretion in judicially estopping the plaintiff from pursuing her Superior Court claims.

The judgment on the pleadings is reversed, and the case is remanded for further proceedings consistent with this opinion.

<u>So ordered</u>.